# Lucas *v.* New Hebron Bank, Inc., *et al.*

(Division A. April 25, 1938. Suggestion of Error Overruled May 9, 1938.)

[180 So. 611. No. 33172.]

McIntosh & McIntosh, of Collins, for appellant.

**Livingston, Milloy & Livingston,** of Prentiss, for appellees.

Argued orally by **H. M. McIntosh, Jr.**, for appellant, and by **W. H. Livingston**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellant, W. W. Lucas, filed a bill in the chancery court of Jefferson Davis county against the New Hebron Bank et al., alleging that he was the true, legal, and equitable owner of 26 acres of land, hereafter spoken of as lot 4 in a certain section, township, and range, and that the appellees were claiming the title thereto by virtue of certain deeds and deeds of trust which cast a cloud upon his title. He prayed for the cancellation of the alleged title of the appellees, and for confirmation of his title, and for rents.

The appellees answered and denied the material allegations of the bill, alleged title in themselves, and also alleged title in the bank by adverse possession since January, 1917. The bill was filed sometime in 1934.

Upon hearing all the evidence the court below dismissed the bill of appellant, and confirmed the title of the bank in the land here in controversy. By agreement the appellant offered the following record evidence: The United States to Nancy Robertson, as shown by tract book of original entries of that county. Nancy Robertson to Willis Lucas, warranty deed dated February 2, 1884.

The appellant further offered a partition deed from the heirs-at-law of Willis Lucas to I. P. Lucas, the latter being an heir-at-law with five other children of Willis Lucas, which deed of trust recorded and conveyed the 26 acres of land here in controversy. Appellant offered a deed to him to this land from Georgia Lucas, dated October 20, 1926, which is of record in deed book 35, page 102, in the office of the chancery clerk of Jefferson Davis county. E. J. Lucas died in 1926, leaving his widow as his sole heir. So far as is here contended, this evidence constitutes a perfect record title to the land.

The evidence shows the following as the basis of the appellee's title, in so far as the record discloses: A power of attorney from Eli J. Lucas to Isaac P. Lucas, dated March 8, 1908, and recorded; I. P. Lucas, attorney in fact for E. J. Lucas, deed of trust to William Barnes, beneficiary, Henry Barnes, trustee, dated October 20, 1915; William Barnes to C. E. Thompson, appointment of the latter as substituted trustee, recorded December 16, 1916; C. E. Thompson, substituted trustee, by trustee's deed, to I. P. Lucas, January 24, 1922; I. P. Lucas and his wife, Amanda Lucas, to Bank of Monticello, H. E. Wilson, trustee; deed of trust dated January 31, 1920; Bank of Monticello by E. S. Fairman, cashier, to W. H. Livingston, substituted trustee; I. P. and Amanda Lucas to Bank of Monticello, deed of trust dated April 25, 1922; W. H. Livingston, substituted trustee, to John Hardy,

trustee's deed dated January 29, 1926; John Hardy and wife, deed of trust to Bank of Monticello, H. E. Wilson, trustee, dated January 30, 1926; John Hardy to Amanda Lucas, warranty deed, dated August, 1927; Amanda Lucas to John Hardy, G. M. Milloy, trustee, deed of trust dated August 30, 1927; Amanda Lucas to Jefferson D. Riley, J. C. Mobley, trustee, deed of trust dated December 3, 1928; Amanda Lucas to Jefferson D. Riley, J. C. Mobley, trustee, deed of trust dated February 14, 1928; Amanda Lucas to Jefferson D. Riley, J. C. Mobley, trustee, deed of trust dated December 31, 1929; Amanda Lucas to New Hebron State Bank, warranty deed, dated February 15, 1932; all the above conveyances having been duly recorded.

During the period from 1917 to 1936 I. P. Lucas executed two other deeds of trust, one to a stranger, which was never effective.

It will be observed that, so far as record title is concerned, the title of the appellee relates back to, and is based upon, the power of attorney from E. J. Lucas to I. P. Lucas, by virtue of which I. P. Lucas executed a deed of trust in favor of Barnes, which was foreclosed, and he, I. P. Lucas, became the purchaser at the foreclosure sale.

The evidence of the appellant is to the effect that from 1920, when he was appointed attorney by E. J. Lucas in writing, to collect rents, that I. P. Lucas, for the years 1920 to 1924, inclusive, recognized him as attorney for E. J. Lucas as landlord, and paid rent to him. The payments in 1922 and 1923 are evidenced by writings signed by I. P. Lucas, and the evidence of the appellant, undisputed, is that he, as attorney for I. P. Lucas, remained in possession of the land, with I. P. Lucas and Amanda Lucas as his tenants. During that period I. P. and Amanda separated, and I. P. became a wanderer, not living in the state. During the years 1928 to 1931 Amanda Lucas, according to the undisputed evidence, paid to the appellant rent for the land, for which written receipts

are produced, and are uncontradicted. Amanda Lucas testified that she recognized the appellant as the land-lord. Certain receipts for rent, from W. W. to Amanda Lucas, were attached. Hardy also testified to the same effect.

In 1933, the appellant testified, while he was engaged in plowing the land, Jefferson D. Riley, one of the appellees, came to the field and ordered him from the premises. This was the situation when the bill was filed in this case.

Appellant further testified that he was present at the 1917 sale, when I. P. Lucas purchased the land at a foreclosure sale. He further said that he was present at the foreclosure sale on January 29, 1926, when John Hardy became the purchaser, with Lucas acting as substituted trustee; and that he made no statement or claim with reference to the title at either sale.

E. P. Lucas, whose nickname was "Eunuch," at the time of the execution of the power of attorney, and prior to 1917, was a missionary in Liberia, Africa; and it was there that he executed the power of attorney to his brother I. P. Lucas. The appellant saw the notice of the 1917 sale published in the newspapers. He said his brother Eunuch was present in the county at the time of sale—he did not know whether or not he was advised of the sale at the time. He subsequently said that he was not certain whether Eunuch was in the county, but that he was in the state somewhere. He never returned to Africa, remaining in this country, but not in this state, until his death in 1926. The appellant stated that after the sale he and Eunuch talked about it, and that Eunuch knew of the sale, but claimed to own the land.

The acknowledgment to the power of attorney is in these words: "Republic of Liberia, Grand Bisso County. Justice Officer, Thugden. March 7th, 1908. Eli J. Lucas personally appeared before me undersigned Justice of the Peace in and for the county of Grand Bassa and make oath according to law that the do acknowledge the fore-

going instrument to be her own will and act. Sworn before me, this 8th day of March, 1908. [Signed] G. W. King, Justice of the Peace.''

The appellant further testified that he told Mr. Fairman, cashier of the bank, that he owned the land in controversy at the time Amanda was undertaking to purchase it from him, and to negotiate a loan from the Federal Land Bank in a sufficient amount to pay him and the bank.

Riley and the cashier of the bank testified that, although the appellant traded with Riley for several years, he never heard of appellant's claim to the land until after the deed had been executed to the bank.

Some witnesses testified that Amanda and her husband while they lived together, and Amanda after her husband left, had continued in the occupancy of the land, that they had not heard of any claim by the appellant thereto, and it was understood that Amanda was the owner of the land.

At the conclusion of the evidence a written motion was filed by appellant, under chapter 252, Laws of 1934, requesting the court to make a special finding of fact and of law; in response to which the court made a finding in writing that the appellant was estopped in law and in fact from denying the title of the appellees; that E. J. Lucas was present in Jefferson Davis county during the time the notice of trustee's sale under the deed of trust from I. P. Lucas, attorney for E. J. Lucas, to William Barnes was being published, and that E. J. Lucas had notice of this sale. The court further found that W. W. Lucas was present at each of the trustee's sales of the land involved, and that his action in dealing with the land in subsequent sales from Amanda Lucas to the New Hebron State Bank, and his full knowledge of all the transactions, estopped him from denying the defendant's title, and from recovering, to the hurt of innocent persons; that to permit him to recover would in effect be to allow him to take advantage of his own wrongful acts.

(1) It is contended by appellant that I. P. Lucas in 1907 acquired no title by the foreclosure of the deed of trust to Barnes, and the purchase by him at that sale, for the reason that no power was given by the owner of the land at that time, E. P. Lucas, in the power of attorney to sell or mortgage the land; and that the power of attorney constituted no notice, because there was no acknowledgment.

In reply to this assignment of error we unhesitatingly say that there are no words in the purported acknowledgment which tended to acknowledge delivery of the power of attorney. The acknowledgment was void. See section 2137, Code 1930; Elmslie v. Thurman et al., 87 Miss. 537, 40 So. 67.

The setting forth of the power of attorney in question would require considerable space; it is sufficient to say that it contains a number of high-sounding words and phrases, none of which can be distorted into a grant of power to I. P. Lucas to sell, mortgage, or in anywise alienate the land involved in this case. The land is not mentioned; so the deed of trust to Barnes by I. P. Lucas, attorney in fact, was void, and a foreclosure thereof was likewise void, and the title of Eunuch Lucas, the missionary, was not affected thereby.

On the finding of the court below, E. P. Lucas was estopped because, subsequent to the sale in 1917, of which we have just disposed, he was in the county, knew of the sale, and discussed it with his brother, but took no steps to have it set aside. W. W. Lucas, who was present at the 1917 sale, at that time had no interest in the land whatever, and of course was not estopped because of his presence, or his knowledge of the sale in 1917.

So far as E. J. Lucas is concerned, the only thing disclosed by the record is that he remained absolutely passive, did nothing, and remained silent. Did this constitute an estoppel?

Eunuch Lucas made no statement to any one of the mortgagees, or to anyone else, so far as this record dis-

closes, which would operate as an estoppel under the rule which has been applied by this court a number of times. His title was shown by the record, open to all the parties who were present with I. P. Lucas at the void trustee's sale. The parties defendant, appellees here, knew what the record disclosed as to the want of power in I. P. Lucas to sell his principal's land, as attorney in fact, or agent—possessed actual knowledge of it through having read the power of attorney. Constructively, all the people who dealt with this land were advised of E. J. Lucas's title by the record. Certainly, the evidence shows beyond dispute that in the years from 1920 to 1926 I. P. Lucas so recognized the title of Eunuch Lucas by paying him rent on the land in controversy. The fact that I. P. Lucas, who had no title by virtue of his purchase at the trustee's sale in 1917, executed various and sundry deeds of trust on this land, which he claimed as owner, could have no more effect than if there had been simply one deed of trust executed by him after his supposed purchase.

On the question of estoppel as to E. J. Lucas, the case of Roberts v. Bookout, 162 Miss. 676, 139 So. 175, 176, determines against it here. In that case Bookout, the father, executed what purported to be a deed to his son, D. R. Bookout. However, the deed, dated September 9, 1919, was void, because it conveyed no present interest in the land. On the 7th day of April, 1923, Bookout, the son, conveyed the land to Roberts, who immediately went into possession, built a home, barns, outhouses, and other improvements thereon, permanent and valuable in their nature. The deed from the father to the son was not of record at the time the son conveyed it to Roberts. The purchaser from the son relied solely upon the latter's representation that he owned the land, and had the right to convey it. The father was fully aware of the negotiations between his son and Roberts, and knew that he occupied the land and made valuable improvements thereon. In that case it was argued that the father's silence,

under such circumstances, operated to estop him from claiming the land. The court there said: ''Equity will not, on the mere ground of silence, relieve one who is perfectly acquainted with his rights, or has the means of becoming so. One should ordinarily inquire into the title before he undertakes to purchase land. He whose title is of record has given the notice which all are bound to respect, and generally the law does not require more. It is true, he must not do or say anything to mislead, and must act and speak, if at all, consistently with his recorded title.''

Riley, representing himself and the bank, knew that I. P. Lucas acquired no title by his purchase at the 1917 sale, at least he is charged with this notice, having read the power of attorney. The record, we think, discloses that E. J. Lucas had never, after the execution of that power of attorney, lived in Jefferson Davis county. For a while he was in Africa, and the rest of the time he was a nonresident of Mississippi, although he visited Jefferson Davis county about the time of this sale. The deed of trust executed by I. P. Lucas, as attorney in fact, of itself was notice to investigate to all who would undertake to acquire through him an interest in that land.

The sale in 1926 by Livingston, substituted trustee by virtue of the trust deed executed to the Bank of Monticello by I. P. and Amanda Lucas, dated April 25, 1922, rested upon this power-of-attorney title. There was adequate notice to the Bank of Monticello, and Hardy admits that he had actual knowledge of the claim of the appellant here. At the time of the sale in January, 1926, the complainant, appellant here, had not acquired any sort of title to the land in controversy. In that respect he was a stranger. How could he be estopped simply because he knew that a void sale had been effected? According to appellant's evidence, he did notify representatives of the bank that he owned the land. This was disputed by these representatives. Assuming that the chancellor believed these representatives and did not believe

the appellant, nothing is shown here except the mere silence of Lucas, to be pleaded and put in operation as an estoppel against him. The case of Roberts v. Bookout, supra, and authority there cited, is controlling here, that there was no estoppel.

Although the chancellor was requested in writing by the appellant to make and file a written finding of fact, he complied only to the extent of adverting to the question of estoppel, and made no finding on the facts, or the plea, or the Ten-year statute of limitations. Code 1930, section 2287.

However, with the statement of fact herein set forth, it is clear and undisputed that, from about the year 1920, I. P. Lucas and his wife, Amanda, recognized E. J. Lucas and W. W. Lucas as the landlord, and paid rent, written evidence of that fact appearing from time to time, undisputed. So there was no continuous adverse holding, as between I. P. Lucas and Eunuch Lucas, and likewise as to Amanda Lucas, paying rent to the appellant for the premises. Such holding, as tenant, is not adverse.

We are therefore of the opinion that the title to this land should have been confirmed in the appellant, W. W. Lucas, and a decree will be entered here to that effect. As to rents for the land from and after the year 1932, we will remand the cause, that the chancellor may make and state an account as between the parties on that question alone.

Reversed, decree here, and remanded.