CRAFT, et al. *v.* EVERETT.

No. 41244 October 19, 1959 115 So. 2d 133

*D. A. McLeod,* Mt. Olive ; *Pyles & Tucker,* Jackson, for appellant.

*R. C. Russell,* Magee; *E. L.* and *W. W. Dent,* Collins, for appellee.

ETHRIDGE, J.

This case involves an alleged estoppel of a remainder-man, because of his silence, to assert his interest against a mortgagee of the life tenants. The suit was initiated in the Chancery Court of Simpson County by R. L. Everett against Vardaman Craft, Alex Craft, Christine Craft and Flora Craft Barksdale, to cancel their claims and to confirm Everett's title to 180 acres of land. The trial court granted their relief except as to Barksdale.

Alex and Christine Craft are an elderly Negro couple living in Simpson County. At the time of the trial in 1957 he was 81 years of age, and could not read and write. They owned the land in question. On December 14, 1950 Alex and Christine conveyed this property to their son, appellant Vardaman Craft, and their daughter, Flora Barksdale, but reserved to themselves a life es-

tate. This deed was recorded in the land records of the county on the same day.

Around September, 1950, Harold Everett, a nephew of R. L. Everett, sold some building materials to Vardaman and Clauzelle Craft and to their father, Alex Craft. Vardaman and Clauzelle constructed a building in which to raise chickens, and apparently the venture was successful. Alex undertook to get in the chicken business also. In order to finance this venture, Alex and Christine on August 27, 1951 executed a deed of trust to appellant, R. L. Everett, as beneficiary, covering the 180-acre tract, for the purpose of securing the payment of $2,250.27. At that time Alex owed Everett only a small part of this sum, but the stated amount represented their estimate of the cost of materials for the chicken house and equipment for Alex to enter the chicken business. The deed of trust contained a "dragnet" clause, providing it would secure any further amounts that may be advanced and any other indebtedness of mortgagors to Everett. The instrument was executed by the mortgagors in the Everett store. Witnesses for appellee testified, and the trial court found, that Vardaman Craft was present at the time, made no disclosure of the deed to him and his sister, and was simply silent concerning the status of the title. Everett furnished the feed and baby chicks to Alex Craft, who raised them in "batches" of several thousand each, but for various reasons these "batches" were unprofitable to Alex, who by contract was obligated to pay Everett the cost of the baby chicks and feed before he received any profit.

Alex was unable to pay the installments on the 1951 note, so on March 4, 1954 he and his wife executed a similar renewal deed of trust to Everett as beneficiary, covering the same land, securing a debt to Everett of $2,900. Appellee's witnesses testified, and the chancellor found, that Vardaman Craft was present also in the Everett store when his mother and father executed the

1954 deed of trust. He was silent and said nothing with reference to the 1950 deed to him and his sister. Shortly thereafter Alex retired from the chicken business. On December 8, 1956, the trustee in the renewal deed of trust sold the 180-acre tract at a foreclosure sale to R. L. Everett for $5,100.00, and executed a trustee's deed purporting to convey to him a fee simple title to the land.

Without detailing variations in the pleadings, Everett filed in 1957 a bill of complaint against the four appellants, asserting title to the land under the trustee's foreclosure deed, and seeking to cancel the claims of appellants, to confirm the trustee's deed, and to obtain a writ of possession. The chancery court cancelled the right to the land asserted by Alex and Christine Craft, and Vardaman Craft. It held that Vardaman was "estopped by his actions and conduct from claiming any interest" in the property. Since Flora Craft Barksdale, who owned a one-half remainder estate, lived out of the state and was not present when the deeds of trust were executed, the decree dismissed with prejudice complainant's bill against her. In brief, the effect of the decree was to adjudicate in appellee an estate for the life of Alex and Christine Craft, and a one-half remainder interest. The decree ordered issuance of a writ of possession in his favor.

 █ The trial court was in error in its decision that Vardaman Craft, owning a one-half remainder estate, was estopped from asserting that interest to be in himself. The record reflects that Vardaman was present when both of the deeds of trust, 1951 and 1954, were executed by Alex and Christine Craft to appellee, to secure the mortgagors' debt. Everett did not examine the land records to determine the status of the title. The 1950 deed to Vardaman and his sister Flora, which retained a life estate in the grantors, had been on record since its execution, and of course an examination of

the land records would have reflected its existence. This recorded deed constituted constructive notice to appellee of its contents. ██ Vardaman was present when the original and renewal deeds of trust were executed. He did nothing of an affirmative or positive nature to mislead appellee. He was simply silent as to his interest. He had accompanied his mother and father to the Everett store when they executed these instruments.

19 Am. Jur., Estoppel, Sec. 116, pp. 770-771, summarizes the rule as follows: "The principle has become well established in the law of estoppel as it relates to rights in real property that a person who purchases, or accepts a mortgage of, real property from another party cannot claim the benefit of an estoppel as against a third person who failed to disclose an interest which he possessed with respect to the property at the time when it was being sold or mortgaged, unless it appears that he performed the duty which, under the circumstances in evidence, was incumbent upon him in regard to making inquiries, with the view of ascertaining the actual condition of the title to the property. The nature and extent of the duty have been discussed mainly with relation to constructive notice and constructive knowledge arising from the state of the public records pertaining to real property. The reason for such principle is that it is essential for the application of the doctrine of estoppel in pais with respect to the title of real property that the party claiming to have been influenced by the conduct or declaration of another, to his injury, was himself not only destitute of knowledge of the true state of the title, but also of any convenient or available means of acquiring such knowledge. When the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel. . . . One view concerning the juristic position of a vendee or mortgagee who omits to inspect the records is that 'his ignorance, if it exists, is wilful, and he

acts at his peril.' The preferable theory, however, is that the omission of an intending purchaser or mortgagee to investigate the state of the title of the property in question constitutes negligence on his part. In this point of view, the basis of the doctrine is that the party complaining of the nondisclosure of an interest is chargeable with notice of the contents of the records which relate to the property dealt with and, for this reason, cannot be heard to assert that he was ignorant of the condition of the title.''

There are limitations on this doctrine. It does not apply where the party alleged to be estopped was chargeable with actual fraud. The chancery court did not find and there was no evidence to support a finding of fraud by Vardaman Craft. For this and other limitations of the doctrine, see 19 Am. Jur., Estoppel, Sec. 117. The rule is not applicable to cases in which the party having the undisclosed interest ''misled the party claiming the benefit of the estoppel by some act of a positive or affirmative quality, which was calculated to produce a wrong impression.'' Ibid., Sec. 117. The evidence does not indicate any act by Vardaman of a positive or affirmative nature. His mere silence and presence when the deeds of trust were executed do not estop him. Such conduct does not meet high ethical standards, but the established rule does not bring his non-action within the ambit in which society will utilize its powers to deprive a person of his interest in real property. 31 C. J. S., Estopped, Sec. 90. The mortgagee's constructive notice of the existence of the remainder estate and his negligence in failing to examine the public records is another reason which makes unavailable to him an estoppel against the other party. See also Anno., 50 A. L. R. 668-973, 738, 744, 750, 763, 919-928 (1927).

Roberts v. Bookout, 162 Miss. 676, 139 So. 175 (1952), discusses the recognized rule, under somewhat similar facts. It was there said: ''Equity will not, on the mere

ground of silence, relieve one who is perfectly acquainted with his rights, or has the means of becoming so. One should ordinarily inquire into the title before he undertakes to purchase land. He whose title is of record has given the notice which all are bound to respect, and generally the law does not require more. . . . One who has an interest in land is not estopped by his silence at a time when he knew that another was mortgaging the land as his own in fee, where the interest of such party appears of record. Scottish-Am. Mort. Co. v. Bunckley, 88 Miss. 641, 41 So. 502, 117 Am. St. Rep. 763. To the same effect are Rosenbaum Sons v. Blackwell, 110 Miss. 452, 70 So. 548, and Davis v. Butler, 128 Miss. 847, 91 So. 279, 281, 709. In the latter case the court used this language: 'There were no acts or representations; neither could Butler in any way have been misled by the silence of Davis in the purchase of this timber. On the contrary, there was a vendor's lien staring him in the face, of which he was charged with notice when he purchased.' '' To the same effect are Murphy v. Jackson, 69 Miss. 403, 13 So. 728 (1891), and Lucas v. New Hebron Bank, 181 Miss. 762, 180 So. 611 (1938).

Appellants further contend that the trial court erred in failing to require appellee to file an itemized sworn account. They say the case should be reversed and remanded for that purpose. The chancellor found that such an account had been filed, had been made available to appellants' counsel, but was lost at the time of the trial. After a lengthy colloquy between the attorneys and the chancellor, appellants' counsel waived in the trial court the filing of another itemized account. So appellants are in no position to insist upon a reversal in order to obtain a further accounting, when they previously waived it below. Moreover, appellee in his testimony gave a substantially adequate statement of the items constituting the indebtedness of the mortgagors, Alex and Christine Craft. It aggregated $5,482.49, which

was in excess of the price paid by appellee at the foreclosure sale. The amount owed by mortgagors constituted the total indebtedness from all sources, and came within the specific terms of the "dragnet" clause of the deeds of trust. Walters v. Merchants and Mfg. Bank, 218 Miss. 777, 67 So. 2d 714 (1953).

■■ The trustee's deed executed at the foreclosure sale, which recited that the trustee gave "the notice required by law . . . of the time, place, and terms of sale," is presumptively valid. Chandler v. Bank of Brooksville, 181 Miss. 529, 538-539, 178 So. 797 (1938). ■■ Appellants offered no evidence to overcome this presumption. Proof of publication of the sale was affixed to the trustee's deed prior to its recording. The trustee testified principally about the execution of the deeds of trust, but incidentally was asked whether he advertised and sold the property, to which he replied in the affirmative. No other evidence was offered as to the method of sale. Appellants argue that the attachment to the trustee's deed of the proof of publication requires an implication that notice was not posted at the courthouse door. Miss. Code 1942, Sec. 888. However, the trustee's deed states that the trustee gave "the notice required by law." The deed itself does not recite the details of giving notice, and negative a proper notice, as did the instrument in Jones v. Frank, 123 Miss. 280, 85 So. 310 (1920). The presumption of validity is not rebutted by these limited circumstances, so the trial court correctly held the trustee's sale to be valid. Nor does the evidence indicate any breach of his fiduciary duties by the trustee of the deed of trust.

For these reasons, the decree of the chancery court is affirmed in part, insofar as it adjudicated that the foreclosure sale properly divested the life tenants, Alex and Christine Craft, of their life estates to the land, and that appellee had a right to possession of the property for the duration of the life estates. The decree is

also affirmed in the dismissal with prejudice of the bill as to Barksdale. The decree is reversed in part, insofar as it adjudicated an estoppel of Vardaman Craft from asserting his one-half remainder interest, and judgment is rendered here in that respect adjudicating in him a valid one-half remainder interest.

Affirmed in part, reversed in part, and judgment rendered for appellant, Vardaman Craft.

*Roberds, P. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.