In re EDEN ASSOCIATES, Debtor.

80 B 12247.

United States Bankruptcy Court,
S. D. New York.

July 29, 1981.

Louis P. Rosenberg, Brooklyn, N. Y., for debtor; Richard L. Koral, Brooklyn, N. Y., of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Northwestern Mut. Life Ins. Co.; Helen D. Chaitman, New York City, of counsel.

Anes, Friedman, Leventhal & Rubin, New York City, for First Federal Sav. and Loan Ass'n; Leonard Friedman, New York City, of counsel.

## DECISION ON MOTIONS TO DISMISS THIS CHAPTER 11 CASE

BURTON R. LIFLAND, Bankruptcy Judge.

### I

On December 31, 1980, Eden Associates ("debtor"), whose existence was then newly revealed to the parties in interest in this case, filed for reorganization under Chapter

11 of the Bankruptcy Code.[1] Debtor's sole claimed asset is a parcel of improved real property (garden apartments) in Mississippi.[2]

Debtor initially brought an order to show cause why a) a post-petition foreclosure sale of its claimed real property ("Property") should not be declared null and void as having been conducted in violation of the automatic stay of § 362, and b) the mortgagee and its Mississippi attorneys, Megehee, Brown, Williams and Mestayer ("Megehee") should not be held in contempt for such violation. By cross motion to vacate the stay, the foreclosing mortgagee, who successfully bid in at the sale, asserts that the debtor does not have an interest in the property, and in a separate motion, moves for dismissal of the petition on several other grounds, including those set forth in § 1112(b), and for other relief. Thereafter, hearings on all of the motions were held and substantial testimony adduced over a four-month period.

The record made by the debtor in these proceedings is replete with contradiction and inconsistency concerning the ownership of the Property. The debtor claims to be a New Jersey limited partnership formed to acquire real estate. However, aside from the statements contained in the Chapter 11

petition filed five days before the foreclosure sale, and in two *unrecorded* deeds, (the deed of current interest is likewise *unnotarized*), there is virtually no documentary evidence that this debtor actually existed during any period pertinent to these proceedings. A certificate of limited partnership was produced in court in the name of Eden *Apartment* Associates. The name of *this* debtor is Eden Associates. The certificate was dated July 1, 1977, but was not filed in New Jersey until February 23, 1981, the day before an adjourned hearing on the motions and almost two months after the petition was filed.

In addition, there is a question as to the identity of the general partner of this debtor. The petition lists one corporation, Eastern Development Investment Company ("EDIC") as general partner, and the schedules filed by the debtor list another, General Eastern Business Corporation ("GEBC"). In actuality, both entities are closely held corporate vehicles for the real estate activities of an individual, Walter Cook Jr. ("Cook").[3] Both EDIC and GEBC are active entities with other substantial assets. A third Cook corporation, Mid City Management Corporation ("Mid City"), is the managing agent for this and various other Cook properties. (footnote 3 *supra*).

1. Title I of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2683, enacted and codified as Title 11 of the United States Code, the "Bankruptcy Code", and all section references cited herein may be found in Title 11, unless otherwise indicated.

2. The property is separately identified as phase I and phase III. Phase I is subject to two liens of record: 1) a first trust deed to the foreclosing mortgagee, Northwestern Mutual Life Insurance Company, to secure an unpaid balance of $333,591.21 and 2) a second trust deed to Depositors Savings Bank to secure an unpaid balance of $64,000.00.
Phase III is subject to a first trust deed to First Federal Savings and Loan Association of New Castle ("First Federal") to secure an unpaid balance of approximately $80,000.00. During the course of the proceedings debtor entered into a stipulation on the record with First Federal, *inter alia*, permitting debtor to remain in possession but lifting the stay on the condition that debtor pay $31,000.00 and adhere to a certain mortgage repayment schedule. The parties agreed that default in payment by debt-

or would allow First Federal to foreclose its security lien. Whereupon, First Federal withdrew its request for relief from the automatic stay and did not participate further in the proceedings. Therefore, all references herein to the "Property" and the "mortgagee" shall pertain to phase I and Northwestern Mutual Insurance Company respectively.

3. Cook is no stranger to bankruptcy court proceedings in this district. Two other Cook dominated real estate ventures are or were pending before me: *In the Matter of Ellison Associates,* No. 80 B 11213 and *In the Matter of Chanticleer Associates,* No. 77 B 1463; another is pending before my colleague, Hon. John J. Galgay: *In the Matter of Caravan Associates,* No. 80 B 11696; and another was transferred on a venue change motion by my colleague, Hon. Joel Lewittes: *In the Matter of Olde Concord Associates,* 4 B.C.D. 177 (S.D.N.Y.1978). See also: *Mid-City Management Corp. v. Loewi Realty Corp.,* Bankr.L.Rep. (CCH) ¶ 68,044 (5th Cir. 1981), *In re Country Club Manor Adventure,* No. 78 B 759 (S.D.N.Y.).

The identity and number of limited partners is likewise not determinable. The petition lists only Cook and HGH Financial Corporation as limited partners. The Eden [Apartment] Associates certificate lists 19 limited partners. Cook testified that there were 15 or 20 partners who contributed to this venture in order to acquire a tax shelter. The testimony concerning knowledge by the limited partners of their interest in the property, of foreclosure jeopardy or of the bankruptcy proceeding was contradictory and evasive. It is doubtful that they were cognizant of their purported involvement and concomitant financial risk. (March 31, 1981 Transcript at 53–56).

The debtor's schedule shows six unsecured creditors. However, the creditors' invoices are addressed to Mid City, and Cook testified that these creditors would probably not look to this particular debtor for payment, since his various enterprises often assume each others' obligations. These creditors clearly had no knowledge of the existence of this debtor as their obligor. Moreover, none of the scheduled creditors filed a proof of claim with this court.[4]

Although requested to do so, debtor produced no tax returns, no bank accounts, and no offering statement or correspondence in the name of this debtor.

The Property is situated in Pascagoula, Mississippi. It is improved by two buildings known locally as the Eden Apartments. Northwestern Mutual Life Insurance Company ("Northwestern"), the foreclosing mortgagee, derives its interest in the property from a 1969 mortgage in the amount of $380,000 entered into by Eden Corporation (no relation to the debtor). The mortgagor subsequently conveyed to its principals, Sal and Charles Moschella. As required by the terms of the mortgage, all conveyances must be consented to by the mortgagee. Northwestern consented and the deed was recorded.

The next transfer which appears on the record is from Moschella to EDIC in November of 1977. However, at trial, the debtor produced an unrecorded deed purporting to transfer title from EDIC to Eden [Apartment] Associates on October 10, 1976, 11 months *before* EDIC was the record owner.

In June of 1980, the mortgage in default, Northwestern foreclosed on the Property. But, before the foreclosure Trustee's deed was recorded, EDIC brought the payments current and Northwestern reinstated the loan.

Two weeks later Northwestern consented to a *transfer of the Property from EDIC to GEBC* (which did not take place until August, 1980) with the condition that GEBC would not reconvey without the written consent of Northwestern. Nevertheless, before GEBC even obtained ownership, it entered into an installment land contract with a California entity, representing that *it*, GEBC, was the owner. Not only did it neglect to solicit Northwestern's permission, but the mortgage was again in default.

On August 19, 1980, EDIC conveyed to GEBC and GEBC remained the record owner at the date of the filing of the debtor's petition, December 31, 1980, as well as on the date of the foreclosure sale, January 5, 1981.

The debtor alleges that its current interest in the Property derives from a second unrecorded, unnotarized deed dated September 3, 1980 which purports to convey the Property from GEBC to Eden [Apartment] Associates.

The threshold question, then, is whether the debtor can claim an interest in the Property as of the commencement of the case. Without such an interest in the Property, there is no possibility of rehabilitation under Chapter 11.

II

The doctrine of equitable estoppel denies a person the right to plead or prove an

---

**4.** The only creditor who did file a claim was the City of New York, which filed a *pro forma* claim for use and occupancy tax and unincorporated business tax. In addition, the United States Trustee certified that none of the scheduled creditors evinced an interest in serving on a creditors' committee. § 151102, Interim Bankruptcy Rule X1003(d).

otherwise important fact because of something he has done or omitted to do. 28 *Am.Jur.*2d Estoppel § 27 (1966).

■ The elements necessary to estop a party from asserting an interest in real property are generally held to be:

1. A duty and an opportunity to disclose his interest to third parties;

2. Silence or non-disclosure which induces or influences action by others;

3. Knowledge of an impending transaction by the party sought to be estopped;

4. Lack of knowledge of the identity of the true owner by the party claiming estoppel, which is usually translated as the duty to search the record with respect to title; and

5. Injury to the party claiming estoppel if the party alleged to be estopped is allowed to assert his undisclosed interest.

*Wiser v. Lawler*, 189 U.S. 260, 23 S.Ct. 624, 47 L.Ed. 802 (1903); *Craft v. Everett*, 237 Miss. 360, 115 So.2d 133 (1959).[5]

■ The mere fact, however, that the record title stands in the name of one entity may estop another, who is the real owner, from setting up title or interest as against those entitled to rely on the regularity of recording statute compliance. *Barron v. Federal Land Bank of New Orleans*, 182 Miss. 50, 180 So. 74 (1938). In that case, a grantee did not record his deed or attempt to correct or cancel another deed from the grantor which he, the grantee, knew erroneously included his tract. He was estopped to assert his title against a bank that acquired an interest in his property through a deed of trust on the faith of the public land records. The court held that where an equitable owner has actual or constructive notice that the title to property stands in the name of another, and that it is liable to lead to reliance on the apparent ownership, and steps are not taken promptly to disclose the real title, the true owner will be estopped to assert his right against one actually deceived by such appearance. *See also Chevron Oil Co. v. Clark*, 291 F.Supp. 552 (S.D.Miss.1968). (Citing *Barron* with approval).

■ In the case at bar and based on the facts herein presented, the debtor, Eden Associates, must be equitably estopped to assert its ownership of the property in question. GEBC recorded its title on August 19, 1980 and retained that title at the time of the filing of the debtor's petition and at the time of the foreclosure. At all key stages of this period GEBC held itself out as the owner of the property. Specifically:

1. It dealt with the unsecured creditors;

2. It warranted to a California purchasing entity that it owned the Property;

3. From September through December of 1980, Norman Kaye, Executive Vice President of GEBC, negotiated with Northwestern in regard to bringing the mortgage current. In all his discussions with Carl Megehee, Northwestern's Mississippi counsel, even as late as the day before the bankruptcy filing, Kaye, desperately negotiating, never disclosed the alleged interest of the debtor, and at all times reinforced the belief that GEBC was the owner of the Property.

4. On July 10, 1980, GEBC signed an amendment to the mortgage with Northwestern promising not to transfer the Prop-

---

**5.** Citations to Mississippi law are appropriately dispositive of the issues herein in view of the significant connection to that state (situs of the property and of the foreclosure sale, management of the property, public records and local contact).

*See Factors v. Pro Arts*, 652 F.2d 278 at 280 (DISCUSSION) (2d Cir. 1981), citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). (There being no federal law concerns here, the bankruptcy court, as a federal court, is "obliged to apply the law to which the forum state, New York, would have turned had the suit been filed in state court.") The New York "center of gravity" theory justifies application of Mississippi law in this case. *See e. g. Auten v. Auten*, 308 N.Y. 155, 124 N.E.2d 99 (1954). In any event the applicable principles of equitable estoppel are shared equally by Mississippi and New York. *See e. g. United States v. Bedford Associates*, 491 F.Supp. 851, 866–67 (S.D.N.Y.1980); *In re Delta Motor Hotel of Syracuse*, 10 B.R. 585 (Bankr.Ct. N.D.N.Y. 1981). (reciting basic principles of equitable estoppel).

erty without Northwestern's written permission. Subsequent to the agreement GEBC both signed an installment land contract and allegedly conveyed the Property to the debtor. In neither instance did GEBC seek to obtain Northwestern's consent.

The debtor attempts to excuse these improprieties by explaining that Cook controls GEBC, EDIC, Mid City and Eden Associates and transfers property among them with little or no formality. Norman Kaye testified (February 24, 1981 transcript at 93) that Walter Cook has a "box full of unrecorded deeds", most of them unnotarized. Cook corroborated this, "It's poor business on our part and it's stupid and we're not doing it any more. But there are numerous cases, maybe over the years as many as 20 deeds that were never recorded, just kept in the files, trustee's deeds." (February 31, 1981 transcript at 84).

For convenience in tracking the debtor's [Cook's] deceptive and inconsistent conduct there is annexed an appendix containing a chronology of some of the court's findings of fact.[6]

In this case, Norman Kaye spoke for GEBC as an officer of that corporation. However, he also acted for the debtor through its irregularly declared general partner, GEBC. By his affirmative representations that GEBC owned the Property and his silence regarding Eden Associates' interest, he encouraged Northwestern to believe it was dealing with GEBC, the record owner of the Property, which is a visible corporation with substantial other assets. Moreover, Northwestern diligently rechecked the records and, finding no reference to this debtor, went ahead with the sale. Cook and Kaye, now wearing their hats as agents of Eden Associates, must accept the consequences of their deceptive

practices. They are estopped from coming into this court, producing a secret deed and asserting as against Northwestern and other relying creditors that the "real" owner of the Property is the debtor. Cook's maneuvers in concealing from his creditors the ownership of his property interests are remarkably similar to the techniques used in the game of "Three Card Monte."[7]

### III

The second issue presented is whether the debtor's petition should be dismissed.

Section 1112(b) of the Code provides for conversion or dismissal of a case for "cause". It lists nine examples of cause, but the list is not exhaustive. The pertinent legislative history states, "The court will be able to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases." House Report No. 95–595, 95th Cong. 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. What is cause under § 1112(b) is subject to judicial discretion under the circumstances of each case. *In the Matter of Nancant*, 8 B.R. 1005 (Bankr.Ct. D.Mass. 1981).

Some Bankruptcy Courts consider lack of "good faith" as cause to dismiss a petition. Chapter 11 of the Bankruptcy Reform Act of 1978 ("the Code") in some respects consolidates Chapters X, XI, and XII of the Act of 1898 (now repealed). While only Chapter X required good faith at the outset, a good faith filing requirement was often read into Chapter XI and XII by judicial construction. *In re Victory Construction*, 9 B.R. 549, 3 C.B.C.2d 655 (Bankr.Ct. N.D.Cal. 1980).

In *Victory* the court states,

It would be more than anomalous to conclude that in consolidating the provisions of Chapter X, XI and XII in Chapter 11

---

**6.** The appendix contains *additional* findings of fact; the opinion shall constitute this court's findings of fact and conclusions of law in accordance with Rule 752 of the Rules of Bankruptcy Procedure.

**7.** A game of chance perilous to the unwary currently in vogue where a confidence man

aided by shills deftly shuffles three playing cards in such fashion as to render almost impossible the location of the winning card (while giving a false appearance of easy identification to ease risk indulgence). See Woods & Goddard, *The Complete Book of Games*, 310 (Doubleday 1940).

of the Code, Congress intended to do away with a safeguard against abuse and misuse of process which had been established and accepted as part of bankruptcy philosophy (either by statute or decisional law) for almost a century.

9 B.R. at 558, 3 C.B.C.2d at 667.

Where it was asserted in a Chapter XII (real property arrangement) case that a debtor was attempting to fraudulently procure the jurisdiction of the Bankruptcy Court on the eve of foreclosure, courts often found that it was appropriate to inquire into the debtor's good faith at the start of a proceeding. *In re Mallard Associates*, 463 F.Supp. 1259 (S.D.N.Y.1979).

Under the Code, to prevent misuse of the Chapter 11 remedy by debtors which are not bona fide business organizations filing to reorganize an ongoing enterprise, a petition may be dismissed pursuant to § 1112(b). This is particularly applicable to asset-culled entities where "debtors have elected not to submit the actual entities in interest to the jurisdiction of the court, thereby isolating the entities in interest from the scrutiny and control of the court during proceedings." *In re Dutch Flat Investment*, 6 B.R. 470, 471, 6 B.C.D. 1134, 1135, 3 C.B.C.2d 136, 138 (Bankr.Ct. N.D. Cal. 1980).

In addition, where there has been a change in legal form near the time the petition is filed, the court will inquire into the debtor's good faith to make sure that the purposes of the Code are not being abused and that the debtor is the type of entity within the contemplation of the Code. *In re G-2 Realty Trust*, 6 B.R. 549, 6 B.C.D. 1072 (Bankr.Ct. D.Mass. 1980).

*Victory, supra*, in this court's opinion, placed undue emphasis on the "intent to use Chapter 11 to delay the secured creditors in the enforcement of their rights." 9 B.R. at 564, 565, 3 C.B.C.2d at 675. Moreover, the *Victory* court held that good faith is an "implicit prerequisite" to the filing and continuation of a Chapter 11 case, 9 B.R. at 558, 3 C.B.C.2d at 667. I cannot agree with so sweeping a holding. Good faith as the *sine qua non* for the filing and maintenance

of a Chapter 11 case should be probed elastically and on a case by case basis. To do otherwise invites unnecessary rigidity in bankruptcy administration emasculating bright prospects of reorganization by slavish review of pre-petition dealings by debtors with their creditors.

■ In determining a lack of good faith, the court should emphasize the intent to abuse the judicial process rather than to delay creditors. Good faith is "merged into the power of the court to protect its jurisdictional integrity from schemes of improper petitioners seeking to circumvent jurisdictional purposes absent any economic reality." *In the Matter of Northwest Recreational Activities, Inc.*, 4 B.R. 36, 39, 6 B.C.D. 164, 166 (Bankr.Ct. N.D.Ga. 1980).

The debtor in *Northwest* acquired its property from its principals on the day the corporation was formed and then immediately filed a Chapter 11. The court found no intent to wrongfully delay or defraud creditors. It found, further, that the petitioner always intended to run its business through a corporation, but had acquired the property through the individuals first because of a delay of their counsel in forming the corporation. 4 B.R. at 40, 6 B.C.D. at 167.

*Dutch Flat, supra*, presents facts analogous to those of the instant case. There, a corporation was formed five days before the filing of a Chapter 11 petition. As in the instant case, the debtor had no other assets, no ongoing business and no employees. In addition, there was only one fully secured creditor and no unsecured creditors. Under the circumstances, the court found that no reasonable plan of arrangement could be proposed and confirmed, and therefore, the petition was dismissed under § 1112(b).

■ The debtor in the instant case would not meet the good faith concerns expressed by the court in the preceding discussion. The record reveals the cavalier and deceitful manner in which Cook handled the property. It is clear that this debtor was formed, if at all, and the property purport-

edly conveyed to it, to shield the assets of Cook's more affluent companies from the jurisdiction of the Bankruptcy Court. Instead of the record owner, GEBC, the debtor is Eden Associates, a limited partnership whose certificate was filed the day before it was produced in this court, whose only alleged asset is this property, who has no other real creditors and no employees; who has, in short, no ongoing business to reorganize.

The Bankruptcy Court provides a safe harbor for a debtor only so long as it continues to be evident that the effective rehabilitation of the enterprise is reasonably possible. It will soon become evident to the court when a debtor intends only frivolous or unwarranted delay and not effective reorganization, and the case will be dismissed pursuant to § 1112.

*Dutch Flat* at 39–40.

Given the specific facts in this case, the court concludes that:

1. The debtor is estopped from asserting its interest in the Property;

2. The debtor, with no assets, no bona fide creditors and no business, cannot effectively rehabilitate its enterprise; and

3. The debtor impermissibly abused the jurisdiction of this court.

Therefore, "cause" exists to dismiss the petition under § 1112(b). Accordingly, the motion to dismiss is granted.

## IV

Two concerns remain: (a) the impact of § 349(b) and (b) Northwestern's request for counsel fees.

Section 349(b) provides:

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under Section 742 of this title . . .

(1) reinstates—

(A) any proceeding or custodianship superseded under Section 543 of this title; . . .

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

Thus, unless this court orders otherwise, the property will be revested in GEBC upon dismissal and the Mississippi foreclosure proceeding reinstated. This is not a harsh result. Northwestern, aware of a claimed interest in the property asserted by the debtor in these bankruptcy proceedings and with knowledge that the petition had been filed, nevertheless proceeded with the foreclosure sale. February 24, 1981 Transcript at 173–181. In proceeding with the sale in accordance with its perceived rights, it acted at its peril notwithstanding its ultimate vindication. Furthermore, nothing precluded Northwestern from seeking appropriate relief from this court, which at the very least had facial jurisdiction, prior to the foreclosure sale. See *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 57 (2d Cir. 1976). Therefore, the property will revest, in accordance with the *status quo ante* statutory scheme of § 349, in the entity holding vested ownership on December 31, 1980 (GEBC) subject to Northwestern's foreclosure rights under Mississippi law.

█ Northwestern seeks an award of counsel fees based on § 303(1) and § 105(a). However, as stated above, this petition is being dismissed pursuant to § 1112(b). In view of the fact that the mortgage interest remains undisturbed, that there is undisputed testimony that the value of the property is in excess of the amount of the mortgage plus counsel fees and costs, and that the terms of the deed of trust provide for counsel fees; the mortgagee is free to seek recovery of counsel fees in the proper forum. A more appropriate forum for the determination of liability for and quantum of fees is the local court having jurisdiction over the property and over the enforcement of the mortgagee's rights.

Submit an order in conformity with this decision.

## APPENDIX

| Acts Contra to Debtor's Claim of Ownership | Recorded or Published Events | Date | Record Titleholder |
|---|---|---|---|
| | 1. Deed of Trust from Eden Corp. to Northwestern | | |
| | Lewis Affidavit – Exhibit B | 6/27/69 | Eden Corp. |
| | 2. Deed from Eden Corp. to Moschella (with requisite permission of Northwestern) | | |
| | Lewis Affidavit – Exhibit C | 6/30/71 | Moschella |
| 3. Deed from EDIC (not yet owner of property) to Eden Apartment Associates (not yet in existence) – deed not recorded – 2/24/81 Transcript at 136, 137, N.W. Ex. 13 | | 10/10/76 | Moschella |
| | 4. Deed from Moschella to EDIC (without requisite permission of Northwestern) | | |
| | Lewis Affidavit – Exhibit E | 11/1/77 | EDIC |
| 5. Eden (Apartment) Associates – certificate of limited partnership signed but not filed (attempted creation of debtor, but not same name) 2/24/81 at 39 N.W. Ex. 6 | | 7/1/77 | EDIC |
| | 6. Northwestern foreclosed, but EDIC paid the arrears and the loan was reinstated, 2/24/81 Tr. at 17, Lewis Affidavit at 2 | 6/23/80 | EDIC |
| | 7. Northwestern agrees that EDIC may convey to GEBC as long as GEBC does not reconvey without the requisite permission of Northwestern – 2/24/81 transcript at 52, Northwestern Exhibit 8 | 7/10/80 | EDIC |
| | 8. Installment land contract between EDIC and Eden II (Calif. entity) entered into without requisite permission of Northwestern – 2/24/81 transcript at 52, Northwestern Exhibit 8 | 7/15/80 | GEBC |
| | 9. Deed from EDIC to GEBC (see prior 7/10/80 consent) – 2/24/81 Trans. at 55, 56 N.W. Lewis Affidavit – Exhibit F | 8/19/80 | GEBC |
| 10. Deed from GEBC to Eden Associates – not recorded, not notarized, no requisite consent by Northwestern. N.W. not aware of deed until produced in these proceedings from Cook's "box of unrecorded deeds" – 2/24/81 transcript 25, 61, 62, 93, Northwestern Ex. 3 | | 9/3/80 | GEBC |
| 11. Cook, without reference to Eden Associates, sent the July and August mortgage payments to Northwestern in an attempt to cure the default – 2/24/81 Tr. at 26, Northwestern Ex. 4 | | 9/8/80 | GEBC |

| Acts Contra to Debtor's Claim of Ownership | Recorded or Published Events | Date | Record Titleholder |
|---|---|---|---|
| 12. Northwestern returned Cook's check to GEBC because the Sept. payment wasn't included — 2/24/81 Tr. at 29, 30, Northwestern Ex. 12 | | 10/1/80 | GEBC |
| 13. Northwestern's attorney notified Kaye, representing GEBC, that they would foreclose unless all payments were received by Nov. 14. — both parties identified GEBC as the owner — 2/24/81 transcript at 29, 30, Northwestern Ex. 12 | | 11/7/80 | GEBC |
| 14. GEBC, using its letterhead, offered to pay arrearages in 3 installments ending on Jan. 26, 1981 — 2/24/81 transcript at 27, 28, Northwestern Exhibit 5 | | 11/21/80 | GEBC |
| 15. Northwestern's attorney, still dealing with GEBC as owner, notified it of impending foreclosure — 2/24/81 transcript at 120, 121 | | 12/7/80 | GEBC |
| | 16. Northwestern posted notice of foreclosure — 2/24/81 transcript at 194 | 12/8/80 | GEBC |
| 17. Kaye, on behalf of GEBC, tried to have sale postponed — 2/24/81 transcript at 120, 121 | | 12/30/80 | GEBC |
| | 18. Eden Associates filed Chapter 11 petition — seeks stay of foreclosure | 12/31/80 | GEBC |
| | 19. Foreclosure Sale — Northwestern bid in and bought property | | |
| | Lewis Affidavit — Exhibit A | 1/5/81 | GEBC |
| | 20. Substitute Trustee's deed filed in Jackson County, Mississippi | | |
| | Lewis Affidavit — Exhibit A | 1/7/81 | Northwestern |
| 21. Eden Apartment Associates filed a limited partnership certificate in N.J. in an attempt to establish regularity of the debtor's existence but used a prior inconsistent name — 2/24/81 transcript at 38, Northwestern Exhibit 6 | | 2/23/81 | Northwestern |

| Acts Contra to Debtor's Claim of Ownership | Recorded or Published Events | Date | Record Titleholder |
|---|---|---|---|
| Acts Contra to Debtor's Claim of Ownership | Recorded or Published Events | Date | Record Titleholder |
| Acts Contra to Debtor's Claim of Ownership | Recorded or Published Events | Date | Record Titleholder |