An appropriate order will be entered.

In re Thomas A. MARINO and Edith M. Marino, Debtors.

Thomas A. MARINO and Edith M. Marino, Plaintiffs,

v.

STROEHMANN BROTHERS COMPANY, Defendant.

Bankruptcy No. 5–83–00587.

United States Bankruptcy Court, M.D. Pennsylvania.

May 7, 1984.

Norman M. Lubin, Williamsport, Pa., for Marino.

Kenneth D. Brown, Williamsport, Pa., for Stroehmann.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

The debtors, Thomas A. Marino and Edith M. Marino (debtors), commenced this proceeding to avoid a judicial lien pursuant to § 522(f)(1) of the Bankruptcy Code. For the reasons provided herein, we grant the relief requested.

### FINDINGS OF FACT

1. On July 24, 1975, Thomas A. Marino, the male debtor, entered into an employment contract with Stroehmann Brothers Company (Stroehmann).

2. The contract provided that Stroehmann would pay for Marino's job training in return for his commitment to remain working for Stroehmann for a five (5) year period. The contract further provided that if Marino terminated his employment prior to the five year period, he was required to repay Stroehmann for all expenses incurred on his behalf at the rate of 1/60th of the total expenses for each month remaining on the contract at the time the employment was terminated.

3. On September 30, 1978, with 27 months remaining on Marino's 60 month obligation, he voluntarily and without the consent of his employer terminated his employment.

4. On October 22, 1979, Thomas A. Marino transferred a 1979 Pontiac Grand Prix titled to his name to John Powell Chevrolet as a trade-in for a 1980 Chevrolet Chevette. The Chevette was registered to the name of Edith M. Marino.

5. At the time of the transfer, Thomas A. Marino had equity in the Grand Prix of One Thousand Nine Hundred Seventy-Nine and 97/100 ($1,979.97) Dollars.

6. Stroehmann obtained a judgment against Thomas A. Marino in the amount of Two Thousand Seventeen and 17/100 ($2,017.17) Dollars at an Arbitration Hearing held on November 13, 1979.

7. Stroehmann filed an action in equity in the Court of Common Pleas of Lycoming County, Pennsylvania, to No. 81–0477 requesting the Court to declare a lien on the 1980 Chevrolet Chevette. On December 21, 1982, the Court ordered that the con-

veyance of the equity in the 1979 Grand Prix from Thomas A. Marino to Edith M. Marino be set aside and that a lien in the amount of $1,979.97 be placed on the 1980 Chevrolet Chevette registered in the name of Edith M. Marino.

8. Debtors filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

9. Debtors claim the 1980 Chevrolet Chevette as exempt property pursuant to 11 U.S.C. § 522(d).

10. The automobile has a fair market value of Three Thousand Five Hundred ($3,500.00) Dollars.

11. Debtors filed the Motion to Avoid a Judicial Lien on December 22, 1983.

## DISCUSSION

The parties stipulated that this Motion to Avoid a Judicial Lien be adjudicated on the following issues:

1. Whether the lien entered by the Court of Common Pleas of Lycoming County is a judicial lien under the Bankruptcy Code; and

2. Whether debtors can stack the exemptions under 11 U.S.C. § 522(d)(2) and (d)(5).

Debtors contend that Stroehmann's lien should be completely avoided because it impairs the exemptions they are entitled to under 11 U.S.C. § 522(d)(2) and (d)(5). Stroehmann responds that the lien entered by the Common Pleas Court of Lycoming County is not a judicial lien under the Bankruptcy Code, but rather is a security agreement and, therefore, not subject to avoidance pursuant to § 522(f)(1). In addition, Stroehmann also argues the debtors may not aggregate exemptions to avoid the lien because their equity in the car is less than the value of the lien and claimed exemptions are restricted to the amount of equity in the subject property.

In addressing the first issue, we are asked to determine if a judgment entered by a State Court creating a lien on an automobile owned by the male debtor is a judicial lien as contemplated by § 522(f)(1). That section states as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is

(1) a judicial lien; or

The Bankruptcy Code defines judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(27). A security interest is defined as a "lien created by an agreement." 11 U.S.C. § 101(37). Section 101(28) defines "lien." The legislative history behind § 101(28) provides that "in general, the concept of lien is divided into three kinds of liens: judicial liens, security interest, and statutory liens. Those three categories are mutually exclusive and are exhaustive except for certain common law liens." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 25 (1978), *reprinted in* 1978 U.S.Code & Cong. & Ad.News 5787, 5811.

■ Stroehmann asserts that the judgment lien entered by the Common Pleas Court has created a hybrid situation in that "attributes of both a judicial lien and security interest are present." Stroehmann relies on the case of *Rosen v. Alderson (Matter of Rosen)*, 34 B.R. 648 (Bkrtcy.E.D.Wis. 1983). The *Rosen* Court citing *Commonwealth National Bank v. United States (In re Ashe)*, 669 F.2d 105 (3rd Cir.1982), instructed that "before the lien may be avoided, prevailing law dictates inquiry into how the lien was created." In *Rosen*, the parties agree that Alderson should have a lien on Rosen's homestead and that a divorce court should give effect to the agreement by entering a judgment which would only become a lien against the homestead. In addition, the Court noted that the lien could not attach to debtor's unspecified real estate, but rather to a particular piece of property. Stroehmann argues that this case is much like the *Rosen* case because

the lien is also created by consent. Stroehmann finds the consent to create a lien in the contractual terms by which the male debtor agreed to accept financial responsibility to repay Stroehmann for all expenses incurred on his behalf at the rate of 1/60th of the total expenses for each month period remaining on the contract at the time the employment was terminated. Stroehmann directs our attention to the following clause of the employment contract to support its contention that the lien was created by consent:

4. In the event Employee, voluntarily and without the consent of the Employer, terminates his employment with Employer prior to the completion of said sixty (60) month period, Employee shall be indebted to and shall repay Employer for the expenses incurred on Employee's behalf in connection with the aforesaid training course at the rate of one-sixtieth (1/60th) of said expenses for each month of the sixty (60) month period remaining at the time of the termination of Employee's employment.

It is on the basis of the above that Stroehmann argues the lien was created by the male debtor's contractual consent and not the judgment of the Court of Common Pleas for Lycoming County. We find Stroehmann's arguments without merit. We are neither convinced nor are we prepared to find that the lien in this case created a security interest as defined in 11 U.S.C. § 101(37).

Unlike *Rosen*, the lien in this case was not created by agreement of the parties as embodied in a stipulation and presented to a court for approval. Rather, the lien is a result of a judgment and order of the Court of Common Pleas of Lycoming County. This judgment and order itself is the result of Stroehmann's initiating a complaint in equity, in essence an adversary proceeding, seeking to have a court declare a lien on an automobile owned by the male debtor. We find an inconsistency in Stroehmann's initiating a complaint in equity in State Court to have a lien declared on an automobile and then proceeding to Bankruptcy Court and contending the lien was created by

agreement of the parties by citing a breach of contract clause from an employment contract. In addition, the employment contract does not even remotely suggest an intent to create a security interest in debtor's property, not to mention the subject automobile. We find, therefore, that the employment contract does not constitute a security agreement pursuant to 11 U.S.C. § 101(37). Although we recognize, as did the *Rosen* Court, that the judgment creditor's lien attached not to unspecified real estate, but rather was confined to a particular piece of property, this is not alone enough to overcome a finding that the judgment created a judicial lien rather than a security interest.

In addressing the next issue, we are asked to determine whether debtors can stack (use the spillover) exemptions listed in § 522(d)(2) with those in § 522(d)(5) to avoid the judicial lien. In pertinent part, § 522(d) provides:

§ 522. **Exemptions**

(d) The following property may be exempted under subsection (b)(1) of this section:

(1) the debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

(2) The debtor's interest, not to exceed $1,200 in value, in one motor vehicle.

\*       \*       \*       \*       \*

(5) The debtor's aggregate interest, not to exceed $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property.

The parties stipulated that the value of the automobile was $3,500. Debtors assert that after claiming the $1,200 exemption they are entitled under § 522(d)(2), there is still $2,300 of value remaining in the auto-

mobile. At this point, Stroehmann's $1,979.97 lien does not impair debtors' exemption. Debtors assert, however, that since they did not claim the homeowner's exemption under § 522(d)(1), they are entitled to apply the spillover exemption of (d)(5) to the balance of the value of the automobile. Under this formula, Stroehmann's lien would be totally avoided, because it impairs debtors' exemptions. Stroehmann responds asserting that the exemptions cannot be aggregated because the total amount debtors could possibly exempt would be the amount of unencumbered equity in the property. In short, Stroehmann arrives at this conclusion by subtracting the amount of the lien ($1,979.97) Dollars from the amount of the fair market value of the car ($3,500.00) Dollars. Therefore, Stroehmann contends that the amount of exemptions debtors can claim is $1,502.03, which is the difference between the amount of the lien and the fair market value of the automobile.

Stroehmann cites numerous cases in legislative history to support its contention that a debtor's exemption right is only to the extent that the debtor has any equity in the property. See *In re Morgan*, 6 B.R. 701 (Bkrtcy.M.D.Tenn.1980); *In re Canady*, 9 B.R. 428 (Bkrtcy.D.Conn.1981); *see also* H.Rep. No. 95–595, 95th Cong. 1st, Sess. 360–61 (1977); U.S.Code Cong. and Admin.News 1978, Page 6316. See also S.Rep. No. 95–989, 95th Cong. 2d, Sess. 75–76 (1978), U.S.Code Cong. and Admin. News 1978, Page 5861. In a vacuum, Stroehmann's contentions are correct, but Stroehmann's analysis concerns only the § 522(d) exemptions and fails to respond to how these exemptions are affected by the lien avoidance provisions of § 522(f). If, as Stroehmann contends, a debtor could not exempt property to the extent it is encumbered by the lien he seeks to avoid, § 522(f) would have no practical effect and would be totally useless to a debtor trying to utilize the Bankruptcy Code provisions to gain a fresh start. Rather, § 522(f) protects the debtor's exemptions and his fresh start by permitting the debtor to avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien. See notes of the Committee on the Judiciary, House Report No. 95–595.

■ We must now determine exactly what exemptions debtors are entitled and to what extent the judicial lien impairs those exemptions. Debtors claim not only the § 522(d)(2) exemptions, but also the general exemptions of § 522(d)(5). Section 522(d)(5) entitles a debtor to $400 plus any unused amount of the exemptions provided in (d)(1). Since debtors did not use any of the (d)(1) exemption, they are entitled to not only the $1,200 exemption of (d)(2) but also the $7,500 exemption in (d)(1) plus $400 pursuant to (d)(5). For authority on a debtor's right to aggregate (d)(5) exemptions to any property, see *In re Bagley*, 1 B.R. 116 (Bkrtcy.E.D.Pa.1979); *Augustine v. United States*, 675 F.2d 582 (3rd Cir. 1982); *Matter of Smith*, 640 F.2d 888 (7th Cir.1981); 3 *Collier on Bankruptcy*, ¶ 522.-14 (15th ed). On the basis of the above figures, debtors are entitled, pursuant to § 522(f)(1), to avoid Stroehmann's entire lien because it impairs their claimed exemptions.

■ Finally, we note that Stroehmann has stressed the importance that the male debtor's transfer of his Grand Prix was found by the Lycoming County Court to be a violation of the Pennsylvania Uniform Fraudulent Conveyance Act, 39 P.S. § 354. We must note an issue of fraud is not a proper subject for consideration and certainly cannot be raised as a defense to an action to avoid a lien under § 522(f)(1). See *Krajci v. Mt. Vernon Consumer Discount Company (In re Krajci )*, 7 B.R. 242 (Bkrtcy.E.D.Pa.1980); *affirmed* 16 B.R. 462 (E.D.Pa.1981).

This opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## ORDER

ORDERED that judgment is entered in favor of the plaintiffs, Thomas A. Marino and Edith M. Marino, and against the de-

fendant, Stroehmann Brothers Company, on plaintiffs' claim for lien avoidance under 11 U.S.C. § 522(f)(1). The defendant's judicial lien in the amount of One Thousand Nine Hundred Seventy-Nine and 97/100 ($1,979.97) Dollars is found to be totally avoided under § 522(f)(1); and further

ORDERED that the clerk of the court shall file this document as the judgment of this court.