In the Matter of **FIRST MANOR CORPORATION** Debtor(s).

**Bankruptcy No. 84–2283.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 21, 1985.

Richard Prosser, Tampa, Fla., for Sunbelt.

Malka Isaak, Tampa, Fla., for debtor(s).

## MEMORANDUM OPINION ON RENEWED MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a voluntary Chapter 11 case and the matter under consideration is a Renewed Motion to Dismiss the Case filed by Sunbelt Service Corporation (Sunbelt), a secured creditor. The Motion is filed pursuant to 11 U.S.C. § 1112(b) and based on the contentions advanced by Sunbelt that (1) there is a continuing loss to the estate; (2) there is an absence of a reasonable likelihood of rehabilitation; and (3) the Debtor is unable to effectuate a plan. In addition, Sunbelt contends that the case was not filed in good faith, therefore, if for no other reason, this Chapter 11 case should be dismissed.

The facts as established at the evidentiary hearing and relevant to the resolution of the Motion under consideration are as follows:

The Debtor is a Florida corporation. Its sole asset is a complex commonly known as the Yacht Club of Sarasota located in Sarasota, Florida. The Debtor filed its first Voluntary Petition for Relief under Chapter 11 on August 3, 1982. At the time of the first filing, FDIC held a first mortgage

on the Debtor's property in excess of $3,500,000; the property was encumbered by a second mortgage; and the 1981 and 1982 property taxes in the approximate amount of $65,000 were unpaid. The property, of course, had not been renovated and was not generating any revenue. The record reveals that during the course of the first Chapter 11, the Debtor was able to obtain new financing from Sunbelt Services in order to pay FDIC and the second mortgage. Thereafter, on May 23, 1983, the Debtor filed a Motion to Dismiss the Chapter 11, which Motion was granted, and on June 6, 1983, the first case was closed. It appears, although it is not clear from the record, that prior to the commencement of the present Chapter 11 case which was commenced by a Petition for Relief filed by the Debtor on October 4, 1984, the Debtor was already involved in a foreclosure action which was instituted by Sunbelt against the Debtor and was pending in the Circuit Court in and for Sarasota County, Florida. The action was apparently commenced by Sunbelt because the Debtor defaulted again on its mortgage obligation to Sunbelt who refinanced the project during the course of the original Chapter 11 case. Of course, the second filing by the Debtor immediately halted any further proceeding in the foreclosure action until November 30, 1984 when this Court granted Sunbelt's Motion for relief from the automatic stay and authorized Sunbelt to proceed to complete its foreclosure action.

Subsequent to the order lifting the stay, this Court scheduled a hearing to determine the value of the subject real estate in accordance with § 506(a) of the Bankruptcy Code. At the conclusion of that hearing, this Court determined that the Debtor had no equity in the property. Additionally, this Court found that approximately $1.5 million would be needed to complete the rehabilitation of the project.

It is without substantial dispute that the Debtor has not conducted any business in any sense since October, 1984. The Debtor so far has failed to establish any account for the debtor in possession simply because the Debtor had no funds with which to open such an account. The real estate taxes for the subject property for the years 1983 and 1984 totalling approximately $70,000 remain unpaid. The Debtor presently has no contracts for sale of any part of the project and failed to present any believable testimony to indicate that it has any firm committments to refinance the project in the near future.

In opposition to the Motion to Dismiss, the Debtor presented the testimony of Mr. Mastari, President of Trend Properties, Inc. (Trend), a Chicago syndicate. Mr. Mastari testified that he had seen the subject property and that he might be interested in acquiring the project for Trend. However, it is clear that Mr. Mastari would not be interested in purchasing the property for any amount greater than the debt owed to Sunbelt.

The Debtor also argues that there is a counterclaim pending in the state court foreclosure action against Sunbelt which, if successful, may result in a distribution to unsecured creditors. In the alternative, the Debtor urges that it will attempt to subordinate the claim of Sunbelt to other unsecured creditors in this case on the basis that Sunbelt was in fact a joint venturer and not a bona fide order. Therefore, the ultimate sale of the project would enable the Debtor to effectuate a plan of reorganization, albeit, through total liquidation unless it will be able to refinance the project.

Having considered the testimony of the witnesses and the record in this case, this Court is satisfied that there is a continuing loss to the estate in that the secured indebtedness is constantly increasing and that there is no reasonable likelihood for rehabilitation; that the Debtor is not now and it is doubtful if ever, able to effectuate a meaningful plan of reorganization. The Debtor has no income, no employees, is not operating any business and the fact that a counterclaim is pending against Sunbelt in state court is without legal significance and does not require a different result. The prospects of success in this litigation are unclear and certain creditors should not

wait for several years, or perhaps indefinitely, for payment. *In re Tiana Queen Motel, Inc.,* 34 B.R. 357 (S.D.N.Y.1983). Be that as it may, this Court is satisfied that the present Petition for Relief was not filed in good faith, but was merely an attempt to forestall the foreclosure action pending in state court. Considering the same factual situation, the Eleventh Circuit in *In re Albany Partners,* 749 F.2d 670 (11th Cir.1984) recently stated:

> In finding a lack of good faith, courts have emphasized an attempt to abuse the judicial process and the purposes of the reorganization provisions. Particularly, when there is no realistic possibility of an effective reorganization and it is evident that the Debtor looks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate.

*See also, In re Eden Associates,* 13 B.R. 578 (Bankr.S.D.N.Y.1981); *In re Victory Construction Co., Inc.,* 9 B.R. 549 (Bankr. C.D.Cal.1981).

In conclusion, the following language from *Breeding Motor Freight Lines, Inc. v. Reconstruction Finance Corp.,* 172 F.2d 416, 421 (10th Cir.1949), *cert. denied,* 388 U.S. 814, 70 S.Ct. 54, 94 L.Ed. 493 (1949) is apropos where the Court stated that:

> ... [T]he court is not required to retain on its docket a proceeding for reorganization which is merely a visionary or impractical scheme of resuscitation.

A separate order will be entered in accordance with the foregoing.