### In re CARDI VENTURES, INC., Debtor.

### Bankruptcy No. 85 B 10253.

United States Bankruptcy Court, S.D. New York.

Sept. 6, 1985.

Smith Panish & Shapiro by Philip Smith, New York City, for petitioner Mosco Realty.

Sherman, Citron & Karasik, P.C. by A. Mitchell Greene, New York City, for Cardi Ventures, Inc.

Kirschenbaum & Fleischman, New York City, for Nehning Bros.

Ronald A. Hollander, New York City, for debtor.

## DECISION

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Mosco Realty Company ("Mosco") seeks an order pursuant to 11 U.S.C.A. § 1112(b) dismissing the Chapter 11 petition filed by Cardi Ventures ("Cardi") on February 27, 1985 on the grounds that the petition was not filed in good faith and that Cardi lacks real creditors. Trial was held on July 17, 1985.

## FACTS

Cardi is a New York corporation with its place of business at 1420 St. Nicholas Avenue, New York, New York. It holds these premises pursuant to a lease with Mosco's predecessor in interest dated October 27, 1972 and due to expire October 31, 1993 ("the lease"). It is this lease which lies at the center of the controversy between Cardi and Mosco. The lease contains a clause permitting the premises to be used only for

a restaurant. The premises have been used for this purpose since at least 1976.

In late 1984, Salvatore Di Carlo, Cardi's president and sole stockholder, entered into an agreement to assign Cardi's rights under the least to IPCO Corporation ("IPCO"), a New York corporation which operates a chain of retail optical stores under the name of Sterling Optical Company. The sale was contingent on Cardi's obtaining a change in the lease's use clause. IPCO deposited $133,333.00 in escrow with Ronald A. Hollander, Cardi's attorney, as security for the purchase of the lease. This sum was to be released to Cardi only upon consummation of the sale.

Cardi and Mosco proceeded to negotiate a possible change in the lease's use clause. While still in the process of negotiating with Mosco, Cardi filed a voluntary petition for relief under Chapter 11 of the Code. In May 1985, after Cardi's Chapter 11 filing, IPCO withdrew its offer to purchase the lease.

With the collapse of the sale to IPCO, Cardi resumed the negotiations with Cohen-Fashion Optical Inc. ("Cohen"), another optical company that had occurred prior to bankruptcy. It then brought an adversary proceeding to change the use clause. Because such relief is to be sought upon motion to approve an assignment under Section 365(f) of the Bankruptcy Code, 11 U.S.C. § 365 (1984), Cardi noticed such a motion seeking authority to assume the lease and assign it to Cohen pursuant to the terms of a lease purchase agreement.

Concurrently, Mosco moved to dismiss on the ground that Cardi has no real creditors, and that its Chapter 11 petition was only an attempt to force a change in the lease's use clause limiting use of the premises to a restaurant and therefore was not filed in good faith. Argument on the motion to dismiss and on the lease assignment was held for July 2, 1985. An evidentiary hearing on the motion to dismiss was ordered and both motions were adjourned to July 17, 1985.

At that hearing, Cardi averred that Cohen had refused to extend the lease pur-

chase agreement's July 15 cancellation date and was at present not interested in buying the lease. It, nevertheless, moved to assume the lease in order to operate a restaurant on the premises. Under its proposal DiCarlo would guarantee performance of the lease. Mosco requested discovery as to whether it would thereby receive adequate assurance under § 365(b)(1) of the Code and the hearing on the motion to assume the lease was adjourned.

With respect to the motion to dismiss the petition, the evidence indicates that as of the petition date, Cardi's only asset was the lease at issue in these proceedings. Consistent with the use clause of the lease, Cardi operated a restaurant on the premises between 1976 and 1980. It then subleased the premises to a corporation known as Donna Barbara which operated a restaurant. Thereafter, its sole business was that of collecting rents and notes. The premises have been closed since at least November 1984. Sometime in 1984, DiCarlo purchased the sublease after Donna Barbara had filed for bankruptcy.

Cardi did not offer evidence of a business bank account, employees, or business being conducted at the premises. Cardi did submit as evidence a creditor register listing the following creditors: Ronald A. Hollander; IPCO Corporation; Franco Mazzella; Mosco Realty; Sheldon Hertz; Salvatore DiCarlo; New York State Tax Commission (listed twice for the same amount); and the City of New York.

IPCO, to whom Cardi claims to owe $133,333.00 is however not a creditor. This sum was deposited in escrow with Cardi's attorney and Cardi had no access to this money until a sale was finalized. Since no sale occurred neither Cardi nor its creditors had a right to this amount.

The City of New York is listed as a creditor in the amount of $15,600. DiCarlo however testified that Cardi had paid all taxes and disputed the claim.

Sheldon Hertz is listed as a creditor in the amount of $10,000.00 brokerage fee for services rendered in connection with the

attempted sale of the lease to Cohen. The brokerage agreement submitted by Mr. Hertz indicates this commission is due upon closing of a proposed sale which is no longer being contemplated. Furthermore, the agreement mentions DiCarlo as the party responsible for payment.

Franco Mazzella is listed as a creditor for $70,000. His attorney, Porcelli, testified that this debt arose from Mazzella's interest in the sale of his interest in this premises to Donna Barbara. In payment Donna Barbara gave notes to Cardi and to Mazzella. Payment on Mazzella's notes was to begin in July 1986. On February 7, 1985, shortly before Cardi filed its petition, Cardi gave Mazzella a note co-signed by DiCarlo and Equipment Repo Resale Corp., which he owns apparently in conjunction with DiCarlo's acquisition of the sublease. Mazzella's position was thereby kept intact. Payment commences in July 1986. No amount is owed prepetition.

Hollander, Cardi's attorney, is listed as a creditor in the amount of $24,980.55. The bills reflect work concerning the dispute with Mosco and prepetition negotiation with IPCO and Cohen. They, however, were addressed to Salvatore DiCarlo at his home address. Of these, only three of the last four mention Cardi in the address. They were sent to DiCarlo's home, two were rendered within approximately 3–4 months of Cardi's filing its petition and a third was rendered afterwards. There is no evidence that Hollander had a retainer agreement with Cardi. Absent same, the addresses on the bills coupled with Cardi's lack of funds to pay Hollander, would indicate that Hollander was looking to DiCarlo, not Cardi, to pay his fee. Particularly is this so since the proposed sale to IPCO and to Cohen each far exceeded the total alleged debt in this case and thereby would have afforded DiCarlo with a substantial premium.

The only creditors of consequence remaining are the New York State Tax Commission to whom Cardi is said to owe $2,287.18, DiCarlo who is a principal of the bankrupt company and is owed $56,000,

and Mosco which is owed $28,104.73 in unpaid prepetition rents. The New York State Tax Commission does not oppose the motion. DiCarlo testified that he did not think that the claim was valid discounting the relatively minimal tax debt.

## DISCUSSION

■ The central purpose of Chapter 11 is to provide debtors a respite from their financial obligations and to give them breathing space in which to rehabilitate their business. *Matter of Levinsky,* 23 B.R. 210 (Bankr.E.D.N.Y.1982); *In re Eden Associates,* 13 B.R. 578 (Bankr.S.D. N.Y.1981); *Matter of Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir.1985); *Matter of Century City Inc.,* 8 B.R. 25 (Bankr.D. N.J.1980). In addition, Chapter 11 protects the interests of creditors who may benefit from the reorganization of the debtor's business. *In re Johns-Mansville Corp.,* 36 B.R. 727 (Bankr.S.D.N.Y.1984).

■ The Code, in § 1112(b) however, permits dismissal of the case or its conversion to Chapter 7 for "cause" including nine specific examples. This enumeration, however, is not exhaustive of the causes for dismissal of a Chapter 11 petition. The word "including" is defined in 11 U.S.C.A. § 102(3) as not being limiting and courts may, if justified by the circumstances of a particular case, look to other factors as cause for dismissal. *In Re Larmar States Inc.,* 6 B.R. 933, 3 CBC 2d. 218 (Bankr.E.D. N.Y.1980). Exactly what these factors are is not illuminated by resort to the legislative history. Congress indicated only that "courts will be able to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases." House Report No. 95–595, 95th Cong. 1st Sess. (1977) U.S.Code Cong. & Admin.News 1978, p. 5787.

■ In the exercise of that function, good faith in filing a Chapter 11 petition has become identified as one factor that courts consider in deciding whether or not to dismiss a case. *In re Johns-Manville Corp.,* 36 B.R. 727, 737 (Bankr.S.D.N.Y.

1984), *appeal dismissed* 39 B.R. 234 (S.D. N.Y.1984); *In re Allen Rogers & Co.*, 34 B.R. 631, 633 (Bankr.S.D.N.Y.1983); *In re Eden Associates*, 13 B.R. 578, 584 (Bankr. S.D.N.Y.1981).

■ As nebulous and elastic as that concept may seem, *see e.g., In re Johns-Manville Corp.*, 36 B.R. at 737 (Bankr.S.D.N.Y. 1984) appeal dismissed 39 B.R. 834 (S.D.N.Y.1984), it has been refined to require inquiry as to whether the debtor has any assets, real debts and real creditors, *In re Eden Associates*, 13 B.R. at 585, and whether the debtor is abusing the jurisdiction of the bankruptcy court. *In re Johns-Manville Corp.*, 36 B.R. at 737. Dismissal on this latter ground has been found, as in *In re Wally Findlay Galleries*, 36 B.R. 849 (Bankr.S.D.N.Y.1984), where debtor filed the petition solely as a litigation tactic and in *In re Guglielmo*, 30 B.R. 102 (Bankr.M. D.La.1983) where debtor used bankruptcy proceedings to the detriment of its creditors in executing a management agreement for his benefit. Bad faith was not found where an individual shifted a property to a newly formed corporation that subsequently filed a Chapter 11 petition, where it was established that the individual could have filed a chapter 11 petition himself and thus was not gaining any jurisdictional advantage by creating the corporation. *Matter of Levinsky*, 23 B.R. 210 (Bankr.E.D.N.Y. 1982).

■ The absence of "good faith" as a statutory criterion indicates that the doctrine is to be sparingly applied. Revival of an inactive corporation and using bankruptcy for purposes other than rehabilitation or liquidation or the purposes incident to chapter 13, however, demands close scrutiny, as is illustrated by *In re American Property Corporation*, 44 B.R. 180 (Bankr.M.D.Fla. 1984), which bears some resemblance to the instant case. There, the debtor had been inactive for some four years prior to filing a Chapter 11 petition. Shortly before filing the petition, it purchased real property which it knew was subject to foreclosure proceedings and unsuccessfully attempted to change the property's zoning from shopping center to residential development. Shortly after entry of a final judgment of foreclosure, the Chapter 11 petition was filed. Upon finding that the property was debtor's only asset, that it had no real creditors and that all of its business efforts had been devoted to rezoning the property, the court held that the case should be dismissed for lack of good faith at the time of filing. Similarly suspect are cases where the corporation was not engaged in any on going business activity and only a single creditor would benefit from reorganization under Chapter 11. *In re FJD, Inc.*, 24 B.R. 138, 140 (Bankr.D.Nev.1982).

■ Here, the evidence reveals the lease as Cardi's only asset. Its premises are closed. Cardi did not offer evidence of employees, bank account or other indicia of an on-going business. Cardi's present posture is that it, with the IPCO and Cohen assignments having come to naught, will reopen the restaurant consistent with the use clause of its lease. Yet it is abundantly clear that it filed its petition with the sale to IPCO in place and with Cohen waiting in the wings for the principal reason of attempting to assign the lease notwithstanding the use clause and notwithstanding the bar of state law to an assignment contemplating a material variation of such a clause. *See, 30–88 Steinway Street Inc., v. H.C. Bohack Co.*, 65 Misc.2d 1076, 319 N.Y.S.2d 679 (Civ.Ct.1971).

Secondly, this case appears to be one where the significant debt, other than to Mosco, was generated shortly before the filing of the bankruptcy petition or is owed to the debtor's principal. Since, moreover, the claims of non-insider creditors of consequence in this case, other than that of Mosco and the disputed New York State Tax Commission claims, are either not due or would appear to be owed by Cardi's principal, those creditors are not real creditors requiring the protections of the Bankruptcy Code. Upon analysis, this controversy reduces itself to a two party dispute between Cardi and its landlord, Mosco. Given Hollander's current status as co-counsel to the debtor, DiCarlo's status as

principal and that the payments to Mazzella are not yet due, it does not appear that Cardi filed its bankruptcy petition to resolve these debts.

The landlord-tenant relationship is the subject of state law. When a business has not opened its doors for five years, only holds a lease as its asset, avoids paying rent, and has only a minor debt it should not be allowed to use the Bankruptcy Code as a sword for the apparent purpose of bringing into play bankruptcy policy of estate maximization and the resulting flexibility, *see In re Evelyn Byrnes, Inc.*, 32 B.R. 825, 829–30 (Bankr.S.D.N.Y.1983), accorded debtors attempting to assign leaseholds in premises other than shopping centers. Such forum shopping is an absence of good faith commanding dismissal for cause pursuant to § 1112(b).

For the foregoing findings of fact and conclusions of law, the motion to dismiss Cardi Ventures Chapter 11 petition should be granted leaving the parties free to pursue their landlord-tenant dispute in state court. Mosco's motion for costs and sanctions is denied.

SETTLE ORDER.