**In the Matter of William C. BENDIG, Debtor.**

**Bankruptcy No. 2–85–01087.**

United States Bankruptcy Court, D. Connecticut.

May 26, 1987.

Howard S. Sharples, Jr., Westbrook, Conn., for Essex Sav. Bank, movant.

Richard E. Greenspan, Berlin, Conn., for debtor.

MEMORANDUM OF DECISION RE: MOTION OF ESSEX SAVINGS BANK, SECURED CREDITOR, TO DISMISS CASE

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

In this proceeding, Essex Savings Bank (the Bank) challenges the right of William C. Bendig (Bendig or the debtor) to maintain his chapter 11 case. The Bank has filed a motion to dismiss the debtor's case pursuant to § 1112(b) of the Bankruptcy Code (Code), which authorizes the court to dismiss a case "for cause." The following facts were established at the contested hearing on the Bank's motion.

### II.

In 1982, the debtor owned two parcels of land located adjacent to Fall River Brook in Essex, Connecticut. On one parcel, Hollycroft Press, Inc. (Hollycroft), a corporation owned and operated by the debtor, conducted an advertising and fine arts publication business. The debtor's residence was located on the second parcel. On December 18, 1981, the debtor placed a mortgage with the Bank on his residence, securing a note for $120,000.00 calling for monthly payments of $1,630.67. In 1982, Essex experienced severe flooding, causing Hollycroft to go out of business and thereby terminating the bulk of the debtor's income. Although the debtor failed to make any payments for the next three years on the mortgage, the Bank delayed taking any action. On June 25, 1985, however, the Bank started a foreclosure suit in the Connecticut Superior Court. The Superior Court, on October 15, 1985, entered a judgment of foreclosure by sale in which it found the debt due the Bank to be $194,322.37, including costs. The highest valuation for the property by the court-appointed appraisers was $195,000.00. The foreclosure sale, ordered by the court to be held on February 1, 1986, was stayed when the debtor filed his chapter 11 petition on December 13, 1985.

In March 1986, the business property was sold with the proceeds being sufficient

only to pay certain creditors holding secured interests on that parcel. The Bank's debt now approaches $225,000.00,[1] with additional encumbrances on the residence totaling approximately $60,000.00, including $10,000.00 in delinquent taxes owed the Town of Essex. Although the debtor's schedules listed the value of the residence at $200,000.00, the debtor's appraiser who testified at the present hearing stated the value at this time to be $350,000.00 as a result of the explosion of real estate values during the past year along the Connecticut shoreline.

The debtor's estate since the filing of the petition has had no income, except for "insurance settlements" and the receipts from the sale of the business parcel. Bendig himself has earned minor income during this period from occasional consulting jobs. His concept of a reorganization plan is one in which he will devote income from his future employment, yet to be obtained, to cure mortgage arrearages, and that monies currently owed him by Hollycroft will become available for additional payments to creditors. Hollycroft is to obtain these monies out of a malpractice action which Bendig and Hollycroft will commence against attorneys who handled their flood damage claims. The debtor concedes that his primary motive is to retain his residence through the use of this chapter 11 case.

### III.

Section 1112(b) of the Code permits a bankruptcy court upon request of a party-in-interest and after hearing and notice to dismiss a chapter 11 case "for cause." The statute lists nine nonexclusive examples of cause. The legislative history states that "[t]he court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." H.R.Rep. No. 595, 95th Cong., 1st Sess. 406, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6362. In the years following the enactment of the 1978 Code, the issue of

"good faith" in the filing and the continuation of chapter 11 cases has become prominent as one of those factors most frequently considered by courts in dismissal proceedings. *In re Cardi Ventures, Inc.,* 59 B.R. 18, 21 (Bankr.S.D.N.Y.1985) ("[G]ood faith in filing a Chapter 11 petition has become identified as one factor that courts consider in deciding whether or not to dismiss a case."). Two recent court of appeals rulings summarize the current state of the law on good faith. "[W]hen there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate." *Westbrook v. Albany Partners, Ltd. (In re Albany Partners, Ltd.),* 749 F.2d 670, 674 (11th Cir.1984). "Factors relevant in examining whether a Chapter 11 petition has been filed in good faith include whether the debtor had any assets, whether the debtor had an ongoing business to reorganize, and whether there was a reasonable probability of a plan being proposed and confirmed." *In re Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir.1985). The debtor's case cannot withstand a motion to dismiss in light of these holdings.

The debtor proposes using future income from his personal services to fund a plan. Such income, however, is unavailable for a plan. *Fitzsimmons v. Walsh (In re Fitzsimmons),* 725 F.2d 1208, 1211 (9th Cir. 1984) (earnings from services performed personally by an individual debtor not part of chapter 11 case). He has no ongoing business to reorganize.[2] The legal malpractice action, not yet filed at the time of the hearing, even if successful, is too ephemeral an asset on which to support the continuation of this case.[3] *See In re Bock,* 58 B.R. 374, 379 (Bankr.M.D.Fla.1986) (individual chapter 11 debtor who was not engaged in business and whose only asset was alleged claim against former employer could not establish feasibility of plan to be

---

1. Bendig has made only one payment on the Bank's mortgage since the filing of this case.

2. Bendig hopes to be hired by the U.S. State Department and the publisher of *Art in America.*

3. This action was commenced in state court, post hearing, on April 27, 1987.

funded solely from possible recovery in suit). Three circuits have held that debtors who do not own or operate a business are not eligible to reorganize under chapter 11. *Wamsganz v. Boatmen's Bank of DeSoto,* 804 F.2d 503, 504–05 (8th Cir.1986); *Little Creek Dev. Co. v. Commonwealth Mortgage Co. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1073 (5th Cir.1986); *In re Winshall Settlor's Trust, supra.*

IV.

The debtor is an individual who conducts no business and has no business assets; his only assets are a contingent claim and a residence in which he has questionable equity. His secured creditors have allowed him a year-and-a-half in the bankruptcy court to see if he could somehow manage to save his home. Under the circumstances revealed by this hearing, the motion of the Essex Savings Bank to dismiss the case must be, and hereby is, granted. *In re Albany Partners, Ltd., supra; In re Winshall Settlor's Trust, supra; In re Cardi Ventures, Inc., supra; In re First Manor Corp.,* 51 B.R. 40, 42 (Bankr.M.D. Fla.1985); *In re Chesmid Park Corp.,* 45 B.R. 153, 156–60 (Bankr.E.D.Va.1984).

It is

SO ORDERED.