In re James G. McINTYRE and Gayle L. McIntyre.

BANK OF MISSISSIPPI

v.

James G. McINTYRE and Gayle L. McIntyre, Magnolia Federal Bank for Savings, the Federal Deposit Insurance Corporation and John Does 1–10.

Bankruptcy No. 8702166JC.
Adv. No. 870149JC.

United States Bankruptcy Court,
S.D. Mississippi, S.D.

June 14, 1988.

Richard A. Montague, Jackson, Miss., for plaintiff.

Reeves Jones, Jackson, Miss., for defendant.

## OPINION AND ORDER

EDWARD R. GAINES, Bankruptcy Judge.

There came to be heard the Bank of Mississippi's Complaint to Determine the Extent, Validity and Priority of Lien and Motion to Lift the Stay or Provide Adequate Protection, the counterclaim of the debtors against the Bank of Mississippi, and the debtors' motion to strike the brief filed by the Bank of Mississippi. Having considered the evidence, both oral and documentary, the Court does find as follows:

1. The primary property which is the subject of this adversary proceeding is the residence of the debtors. It is located at 2145 Sheffield Drive, Jackson, Hinds County, Mississippi.

According to Vernon C. Spencer, a real estate appraiser offered on behalf of the Bank of Mississippi, the present fair market value of the residence is $220,000.00, without any reduction for such traditional closing costs as a 6% real estate commission, attorneys fees, survey fee, appraisal fee, termite inspection fee, title insurance, and recording fees. After deducting these closing costs, it was Mr. Spencer's opinion that the net amount which would be realized by the debtors would be $200,000.00.

According to Joe William Parker, the real estate appraiser offered by the debtors, the present fair market value of the property without a deduction for the traditional closing costs is $241,000.00. After a deduction for the closing costs, the net figure for the debtors would be $227,675.00.

Both appraisers testified that there was a possibility of a 5% maximum margin of error in their computations. They disa-

greed as to the number of square feet in the house, but the variance was insignificant.

The uncontroverted evidence presented at the trial showed the following encumbrances and liens on the property:

| | |
|---|---|
| Magnolia Federal (balance due on first mortgage as of 5/23/88 with per diem thereafter of $16.48) | $66,789.65 |
| Attorneys' fees due Magnolia Federal under first mortgage | 3,866.00 |
| Bank of Mississippi (balance due on second mortgage as of 5/23/88 with per diem of $33.02 thereafter) | 120,019.10 |
| Federal Deposit Insurance Corporation (balance due on third mortgage as of 5/23/88) | 68,036.57 |
| Federal Tax Lien | 28,479.31 |
| Mississippi State Tax Commission Lien | 1,200.00 |
| Total without Bank of Mississippi's attorneys' fees | $288,390.63 |

The foregoing shows conclusively that the debts and encumbrances on the residence far exceed the value of the property. Even if the attorneys' fees and expenses requested by the Bank of Mississippi were not awarded hereinafter, there would still be no equity in the property for the debtors.

In an attempt to create equity in the property, the debtor, James G. McIntyre, testified that he had an *oral* agreement with the Bank of Mississippi to apply all of his payments to principal and none to interest. Mr. McIntyre's C.P.A., Fred Brown, re-computed McIntyre's two notes with the Bank of Mississippi on the assumption that all payments should have been applied to principal and none to interest. According to the computations of Mr. Brown, note 03869 to the Bank of Mississippi would actually have been paid off with a surplus of $919.36. With reference to note 02822, there would be a balance due of only $46,-638.01, and thus equity in the property for the debtors.

The evidence offered at the hearing totally failed to support McIntyre's contention that all payments were to be applied to principal.

Laverne Brock, Vice President and Branch Manager of the main office of the Bank of Mississippi in Jackson, testified that she elected to apply only the proceeds generated on the Kramer note and the Reynolds and Perry note to principal. All other payments were treated in the traditional manner of applying the payment first to interest and the balance to principal as per the requirement of § 75–17–9 of the Mississippi Code of 1972, as Amended. The bank records reflect the proper credit and allocation of every payment made by the debtors.

While the debtor, James McIntyre, testified under oath that all payments were to be credited to principal and none to interest, the credibility of his testimony was totally destroyed by the production in evidence of the federal income tax returns for the debtors covering 1983 through 1985. (See Exhibit P–30). Those tax returns clearly reflect that the payments made to the Bank of Mississippi were treated *by the debtors as interest payments.*

In addition to having no equity in the property, the debtors have failed to show to the Court that the residence is necessary for their reorganization under Chapter 11 of the United States Bankruptcy Code. The residence is non-income producing property and a financial burden to the debtors. More affordable housing is readily available to the debtors in the Jackson area whether it be rented, leased, or purchased.

■ Having determined that there is no equity in the debtors and that the property is not necessary for the reorganization of the debtors under Chapter 11, the Court is of the opinion that the Motion to Lift Stay filed by the Bank of Mississippi should be granted.

2. The nature, extent and validity of the liens of Magnolia Federal, Bank of Mississippi and the Federal Deposit Insurance Corporation are set forth hereinabove.

3. The Court finds that the fair market value of the debtors' residence is $235,-000.00, without any deductions for the aforesaid traditional closing costs.

4. With reference to the debtors' motion to strike the brief filed by the Bank of Mississippi, the Court is of the opinion that the motion is not well taken and should be denied.

5. There is one issue raised in the pleadings filed by the defendant which requires special comment.

■ Due to the default by the debtors in the payment of their obligations to the Bank of Mississippi under the aforesaid promissory notes # 03869 and # 02822, the Bank of Mississippi and the debtors entered into a new Contract and Agreement on December 5, 1986 (see Exhibit P–12). Due to the default by the debtors on the payment of their obligations under this new agreement, another Agreement was executed by the Bank of Mississippi and the debtors on January 9, 1987 (see Exhibit P–14).

Under these new agreements, a payment was due by the debtors to the Bank of Mississippi in the amount of $6,000.00 on or before noon, February 5, 1987. The debtors did not make that payment on time.

However, the debtors did tender the money owed by them to the bank within five or six days after February 5, 1987, and before foreclosure proceedings were instituted.

The Bank of Mississippi refused to accept the payment and instituted foreclosure proceedings with the foreclosure sale being scheduled for March 25, 1987.

The debtor, James McIntyre, was left no recourse but to turn to the Chancery Court of the First Judicial District, Hinds County, Mississippi, on March 10, 1987, for a temporary restraining order (see P–15). After a hearing on the merits, Chancellor Stuart Robinson issued a temporary restraining order against the Bank of Mississippi enjoining the foreclosure scheduled for March 25, 1987 (see P–16).

The refusal of the Bank to accept the payment tendered by the debtors was a direct and reprehensible violation of Section 89–1–59 of the Mississippi Code of 1972, as Amended.

The Bank of Mississippi contends that Section 89–1–59 of the Mississippi Code, as Amended, does not apply to "work-out agreements".

Since the foreclosure involved the deed of trust securing the underlying indebtedness represented by the "work-out agreements", this Court finds the Bank's contention without any merit whatsoever.

Based on the misconduct of the Bank of Mississippi with reference to this particular issue, the Court is of the opinion that the attorneys' fees awarded the Bank of Mississippi by this Court should not include any reimbursement for fees arising out of the Chancery Court proceeding for the temporary restraining order.

■ 6. Having heard the testimony and having considered the evidence, the Court finds that the counterclaim filed by the debtors against the Bank of Mississippi is not well grounded in fact, nor is it warranted by existing law, or a good faith argument for the extension, modification or reversal of existing law.

The Court is further of the opinion that the counterclaim was interposed for the improper purpose of harassing the Bank of Mississippi and to delay these proceedings.

The counterclaim is precisely the kind of pleading which Bankruptcy Rule 9011 and Rule 11 of the Federal Rules of Civil Procedure seek to prevent.

The allegations in the counterclaim filed by the debtors were of such a nature that the Bank of Mississippi was unnecessarily put to great expense in terms of time and money for discovery and defense against the violative counterclaim.

On the date of the hearing in Jackson, Mississippi, the debtor, James G. McIntyre, and his attorney, Reeves Jones, surprised the attorneys for the Bank of Mississippi, the attorney for Magnolia Federal Bank for Savings, and this Court, by announcing that the debtors would not pursue the counterclaim because they could not prove the allegations contained therein. This startling admission and disclosure was not made until the time of the hearing. As a result, the Bank of Mississippi, its employ-

ees, witnesses, and attorneys sustained losses of time and money to prepare for and attend the hearing. In addition, it resulted in a loss of time for the Court in preparation for the hearing on the issues raised and law cited in the counterclaim.

The Court finds that the debtors and their attorney violated Bankruptcy Rule 9011.

7. Having determined that the debtors and their attorney violated Rule 9011 of the Bankruptcy Rules, it is this Court's difficult but inescapable duty to fashion an appropriate sanction. The recent opinion in *Thomas v. Capital Securities, Inc.*, 836 F.2d 866 (5th Cir.1988) gives clear guidance, instruction, assistance, and a mandate to this Court regarding the issue of sanctions.

As stated on the record of this hearing, the debtors' attorney, Reeves Jones, signed the pleadings and memoranda which were actually prepared by the debtor, James G. McIntyre, with little or no independent factual inquiry by Mr. Jones. It should be noted that the debtor, James G. McIntyre is also a practicing attorney with over twenty years of experience in commercial law and real estate.

The evidence further showed that Mr. McIntyre conducted all of the discovery by himself with limited involvement by his attorney, Reeves Jones. By signing the pleadings and other pertinent papers in this adversary proceeding, and serving as counsel of record, Mr. Jones assumed the responsibilities and duties imposed upon him by Bankruptcy Rule 9011.

This is an unfortunate case where the attorney for the debtors believed everything his clients told him without inquiry into the facts, the law, or the motives of his clients. In addition, the attorney, failed in his continuing obligation to reevaluate his position in the litigation until the moment of the hearing.

This Court believes that the bulk of responsibility in this violation of Rule 9011 is on the shoulders of the debtors and not their attorney.

In light of the *Thomas* ruling and the facts and circumstances in this case, the Court finds that the appropriate sanction for the attorney, Reeves Jones, is as follows:

(1) The admonition of the Court to comply in the future with Rule 9011;

(2) Payment of $1,500.00 to the Bank of Mississippi within 180 days of this order; and

(3) The careful reading of the *Thomas* case once each day for five consecutive days before filing another complaint in any Federal Court.

The evidence in this case reflects that Mr. Jones received a total of $1,500.00 for his representation of the debtors. To sacrifice the cash received as a fee from the debtors constitutes a sufficient monetary sanction for Mr. Jones.

8. With reference to the appropriate sanction for the debtors, the Court is of the opinion that all of the reasonable attorneys' fees and expenses incurred by the Bank of Mississippi as a result of the filing of the violative counterclaim should be paid by the debtors.

Based on the fee applications submitted by the attorneys for the Bank of Mississippi, as adjusted by this Court in light of *First Colonial Corporation of America* 544 F.2d 1291, 11 CBC 131 (5th Cir.1977) and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), the amount of fees and expenses awarded for this violation of Rule 9011 totals $16,-994.38. This sum is included in the total awarded hereinafter to Wells, Moore, Simmons and Stubblefield.

In addition to the payment of this monetary sanction, the debtor, James G. McIntyre, is required to read the *Thomas* case once each day for five consecutive days prior to the filing of any suit in any Federal Court.

9. The total fees awarded and allowed by this Court against the debtors are as follows:

$4,332.65 to Riley, Weir and Caldwell
$38,767.96 to Wells, Moore, Simmons and Stubblefield:

| | |
|---|---|
| $41,395.84 | Total Requested |
| − 2,627.88 | Foreclosure and TRO Fees |
| $38,767.96 | |
| − 16,994.38 | Post–Rule 9011 Violation Fees |
| $21,773.58 | Pre–Rule 9011 Violation Fees |

ORDERED.