**In re Bruce Dwane WILKS and Michelle Marie Wilks, Debtors.**

**Bankruptcy No. 90–12658–FM.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Jan. 28, 1991.

Frederick Walker, F.E. Walker and Associates, P.C., Austin, Tex., for debtors, Bruce Dwane Wilks and Michelle Marie Wilks.

Manuel Mendez, Bickerstaff, Heath & Smiley, Austin, Tex., for Resolution Trust Corp. in its capacity as receiver for University Sav. Ass'n.

Lance J. Vander Linden, Riddle & Brown, P.C., Dallas, Tex., C. Daniel Roberts, Pope, Hopper, Roberts & Warren, P.C., Austin, Tex., for Lomas Mortg. USA, Inc.

## MEMORANDUM OPINION ON MOTION OF RESOLUTION TRUST CORPORATION IN ITS CAPACITY AS RECEIVER OF UNIVERSITY FEDERAL SAVINGS ASSOCIATION FOR RELIEF FROM THE AUTOMATIC STAY BY ANNULMENT AND TO RATIFY THE FORECLOSURE OF REAL PROPERTY

FRANK R. MONROE, Bankruptcy Judge.

A hearing was held on the Motion of Resolution Trust Corporation ("Movant") in its Capacity as Receiver of University Federal Savings Association for Relief from Stay by Annulment and to Ratify the Foreclosure of Real Property in the above-styled and numbered case. Movant seeks a determination that the foreclosure of the Debtors' residence be validated by an nunc pro tunc annulment of the automatic stay, and in response, the Debtors ask that the stay be maintained in order to effectuate their plan of reorganization in which they propose to retain the home and pay Movant the value of the property over time.

This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1334(b) and (d), 28 U.S.C. §§ 157(a) and (b)(1) and the standing Order of Reference existing in this District. This contested matter is a core proceeding under 28 U.S.C. § 157(b)(1)(G). This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

### FINDINGS OF FACT

The parties stipulated to the following facts, which the Court hereby adopts:

1. On August 30, 1990, Bruce Dwane Wilks and Michelle Marie Wilks ("Debtors") filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

2. On June 1, 1984, the Debtors executed an Adjustable Rate Note ("Note") in the original principal amount of $71,500.00 payable to the order of University Savings Association.

3. Concurrently with the execution of the Note, the Debtors executed a Deed of Trust duly recorded of record which granted University Savings Association a lien on the homestead they were purchasing (the "Property").

4. Movant as Receiver of University Federal Savings Association, is the legal owner and holder of the Note.

5. The Debtors are in default of the terms of the Note. Letters demanding payment of the Note and evidencing Movant's intent to accelerate the Note were sent to the Debtors on May 15, 1990.

6. On August 13, 1990, Movant accelerated the maturity of the Note and notified the Debtors that the Property would be posted for a foreclosure sale for September 14, 1990 pursuant to the Deed of Trust.

7. A certified copy of the front page of the Debtors' bankruptcy petition was filed in the Williamson County Property Records on September 4, 1990 at 9:33 a.m.

8. Movant foreclosed between 1:00 and 4:00 p.m. on September 4, 1990. Movant was the successful bidder at the sale.

9. The Debtors do not have any equity in the Property.

The Court from the record further finds the following:

10. Movant did not have notice that the Debtors had filed their petition prior to or on September 4, 1990.

11. Movant conducted the foreclosure sale without such knowledge.

12. The Debtors filed a plan, together with a disclosure statement, on December 7, 1990, which proposes that the Debtors will retain the Property and that Movant be paid $41,000.00 (their alleged value of the home) with interest at the rate of 10.5% per annum amortized over 180 months, or approximately $453.21 per month. Under the terms of the Note, payments adjusted annually from the initial payment of $627.46 per month, including principal and interest.

The $30,471.00 unsecured balance will be treated as an unsecured claim.

13. Movant's appraisal on the Property as of July 9, 1990 reflected a value of $45,-000.00.

## DISCUSSION

In deciding the issues presented, the Court must decide the following issues, which interrelate to some degree:

1) Are the Debtors eligible to be debtors under Chapter 11?; and

2) Is the Debtors' residence such an integral asset to the estate that it is necessary for Debtors' effective reorganization?

### 1) Are the Debtors eligible to be debtors under Chapter 11?

The Debtors are wage earners who do not have an ongoing business to reorganize. Their plan proposes "reorganization" by reducing the amount of the loan on their home. It is neither a global reworking of a business nor a liquidation of assets. The Bankruptcy Code provides that only a person that may be a debtor under Chapter 7, except a stockbroker or a commodity broker and a railroad, may be a Chapter 11 debtor. 11 U.S.C. § 109(d). There is no section of the Code that requires an individual debtor to have an ongoing business to reorganize or assets to liquidate in order to qualify for protection under Chapter 11.

However, in deciding this issue, some courts have gone past a simple reading of § 109(d) to consider the statutory intent of Chapter 11 as set forth in the legislative history. *Grundy National Bank v. Shortt*, 80 B.R. 802, 804 (W.D.Va.1987). Various circuits have ruled on the ability of an individual, wage-earner debtor without an ongoing business to reorganize under Chapter 11; however, "judicial opinion is not unanimous ... [and] the question has split the appellate courts." *Id.* at 804. For example, the Eighth Circuit denied relief under Chapter 11 to a married couple who did not own or operate a business enterprise and whose source of income was from Social Security, pensions, and rent property owned by them. *Wamsganz v. Boatmen's*

*Bank of De Soto*, 804 F.2d 503 (8th Cir. 1986). In the Sixth Circuit, a bankruptcy court denied an individual debtor relief under Chapter 11 because she had no ongoing business to reorganize, *In re Lange*, 75 B.R. 154 (Bankr.N.D.Ohio 1987). And, in the Second Circuit, a bankruptcy court dismissed the Chapter 11 case of individual with no business or business assets. *In re Bendig*, 74 B.R. 47 (Bankr.D.Conn.1987).

Other courts have stressed the business nature of Chapter 11. In its opinion in the *Matter of Little Creek Development Co.*, the Fifth Circuit did so by quoting the Sixth Circuit's opinion in the *Matter of Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir.1985):

> The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state.... '[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre....*' (citations omitted).

*Matter of Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir.1986). This business purpose has also been cited by a bankruptcy court in the Western District of Texas. *See In re Oakgrove Village, Ltd.*, 90 B.R. 246, 249 (Bankr.W.D. Tex.1988) (quoting *Little Creek* ). Also, in the *Matter of Winshall Settlor's Trust*, the Sixth Circuit upheld the decision of a district court finding a trust was qualified to be a Chapter 11 debtor but sustaining dismissal of the case on grounds that Chapter 11 was not intended to be available to entities without assets or an ongoing business to protect. Further, in one of the first cases to decide the issue, a bankruptcy court denied relief under Chapter 11 to business trust whose only asset was single family, debtor-occupied dwelling that produced no income and had only mortgagee creditors. *In re Ponn Realty Trust*, 4 B.R. 226 (Bankr.D.Mass.1980).

The *Little Creek* opinion has been cited by other courts as support for the position that Chapter 11 was intended only for business reorganizations. *See, e.g., In re*

*Wamsganz,* 804 F.2d at 503 & 505 (citing *Little Creek* as holding Chapter 11 relief is limited to debtors engaged in business); *Grundy National Bank v. Shortt,* 80 B.R. at 804 (citing *Little Creek* as emphasizing the business nature of Chapter 11); and *Matter of Bendig,* 74 B.R. at 49 (stating that "[t]hree circuits have held that debtors who do not own or operate a business are not eligible to reorganize under Chapter 11"). However, *Little Creek* did not involve the individual debtor/homestead issue and is viewed by this Court as not controlling on the issue at hand.

The alternate view is guided by the premise that nothing in the Bankruptcy Code prohibits non-business debtors from filing Chapter 11. The Eleventh Circuit in *In re Moog,* 774 F.2d 1073 (11th Cir.1985), allowed a debtor with no regular income to remain under Chapter 11 in order to reorganize her mortgage and consumer debts as no other Chapter was suitable since she was ineligible for Chapter 13 and Chapter 7 contains no reorganization relief. The court recognized that although Chapter 11 petitions are usually filed by business debtors the legislative history anticipates that a consumer might file under Chapter .11 if circumstances warranted. *Id.* at 1074–75. Further, the court argued that eligibility for Chapter 11 under the Bankruptcy Code should remain unchanged from that under the Bankruptcy Act because:

> Chapter 11 under the current code represents a consolidation of the three reorganization Chapters under the previous Bankruptcy Act; Chapter X, Chapter XI, and Chapter XII. Under the Bankruptcy Act individuals and partnerships could file for reorganization under Chapter XI or, if they owned property encumbered by mortgage liens, they could file under Chapter XII. Thus, under the prior Bankruptcy Act, the petitioner would have been eligible for relief under Chapter XII.

*Id.* at 1075.

As further support, the *Moog* court cites Bankruptcy Rule 1007(b), which requires debtors under a Chapter 7 liquidation case or a Chapter 11 reorganization case to file schedules of assets and liabilities in the appropriate form prescribed by either Official Form No. 7 (statement of financial affairs for a debtor not engaged in business) or No. 8 (statement of financial affairs for a debtor engaged in business), as evidence that the drafters of the Code and Rules contemplated non-business debtors under Chapter 11. *Id.*

Other circuits have ruled similarly. The Bankruptcy Appellate Panel for the Ninth Circuit in *In re Warner,* 30 B.R. 528 (9th B.A.P.1983) reversed a lower court's *sua sponte* dismissal of case which had held wage earners were not eligible for Chapter 11 under § 109(d). A bankruptcy court in the Sixth Circuit has held "Chapter 11 is available to wage-earning, consumer debtors willing to master the procedural complexities and shoulder the attendant costs." *In re Gregory,* 39 B.R. 405, 409 (Bankr.M.D.Tenn.1984). And a bankruptcy court in the Second Circuit has ruled that a self-employed individual was eligible to file Chapter 11. *In re Greene,* 57 B.R. 272, 275–76 (Bankr.S.D.N.Y.1986).

The Fifth Circuit has not spoken on this issue. Even though these Debtors would be eligible for Chapter 13 protection, this Court agrees with the position taken by the *Moog* and *Gregory* courts that:

> Although Chapter 11 petitions are primarily filed by business debtors, the legislative history supports the view that consumer debtors might opt for Chapter 11 under certain circumstances. The legislative history does not support the contention that Congress intended to force individual wage-earning debtors into a Chapter 7 liquidation if relief under Chapter 13 is unavailable or unsatisfactory.

*In re Gregory,* 39 B.R. at 409.

Therefore, these Debtors are eligible to file Chapter 11 despite being wage-earners with no business enterprise to reorganize.

2. Is the Debtors' residence such an integral asset to the estate that it is necessary for Debtors' effective reorganization?

The Debtors' main, if not sole, objective under their plan is to reduce the current

lien amount on their home to the property's current market value, alleged to be $41,-000.00, and pay that amount at 10.5% interest amortized over 180 months, with a monthly payment of $453.21. Movant will retain its lien on the Property to the extent of $41,000.00 which it shall be required to release upon payment of the secured claim. Movant will have the right to foreclose upon the Property post-confirmation if Debtors do not comply with the plan terms.

The issue is whether the Debtors' home is an essential key to the Debtors' achieving a successful reorganization. For the purposes of this Motion only, this analysis will presume that a plan such as the Debtors' has a valid objective, i.e., the plan's only purpose is to strip off a secured lien on the property in excess of its value and that the plan has the potential to be confirmed; however, this issue is not before the Court in the context of this motion to lift stay, and the Court is not expressing an opinion on this one way or the other.

No reported decisions from this District or the other districts in Texas were found on this issue. Courts in other federal districts have evaluated the following factors in deciding the issue:

a) the nexus between the residence and the debtor's generation of income;

b) the supply of other suitable housing in the area;

c) the length of time the debtor has been in Chapter 11;

d) whether the residence is a financial burden to the debtor;

e) whether the Chapter 11 was filed solely to stay foreclosure of the home; or

f) whether there is some special reason or circumstance for the debtor to maintain ownership of the residence.

In determining whether the house is used in the production of income, courts have considered whether the debtor has actually used the property to produce income. If no nexus exists between the home and any business operation to be reorganized, the home has been held not necessary for an effective reorganization. *In re Lambert,* 57 B.R. 710, 713 (Bankr.N.D.Ohio 1986).

Further, if the home is a non-income producing property and a financial burden to the debtor, the home is not necessary to an effective reorganization. *In re McIntyre,* 96 B.R. 65, 67 (Bankr.S.D.Miss.1988). Even if the home is used in the production of income, such as a second office for the debtor's business, this fact may not be sufficient to maintain the stay. *In re Sulzer,* 2 B.R. 630 (Bankr.S.D.N.Y.1980). In this case, the debtor, a psychoanalyst, had an office in town as well as in his home. The debtor used his home office more than his city office because he owed back rent for the city office and his landlord was threatening to evict him from that premises. In fact, the debtor saw between 50% and 75% of his patients at his home office. Despite the fact that the home office was more important to the debtor's future plans than the city office because it provided space essentially rent-free to his medical practice, the home office was "convenient" but not necessary to an effective reorganization. *Id.* at 634. The court found that the home office, in contrast to the city office, was not directly related to the debtor's ability to generate income. The court stated:

[I]f the debtor's financial reorganization is dependent upon his maintaining a rent-free office, then this is not the type of luxury to which this court should subscribe within the context of debtor relief. The debtor may continue his practice in any convenient rentable office from which he may generate funds to implement a plan of reorganization. However, the mortgagee cannot, in good faith, be compelled to underwrite the debtor's desire to conduct his practice from his home.

*Id.* at 635.

Here, the home is not used in producing income, and the current monthly payment obligation is clearly burdensome; otherwise, the Debtors would not be taking this action.

Other courts have considered the availability of suitable housing in the area when determining whether the debtor's residence was necessary to an effective reorganiza-

tion. If alternate housing meeting the debtor's minimum living requirements is available in the market, the debtor can satisfy his need for living quarters with other "fungible" housing, and his residence is no longer essential or indispensable to an effective reorganization. *In re Gregory*, 39 B.R. at 411. The debtor bears the burden of showing genuine need for the home; thus, without such a showing, the court may consider that the debtor can " 'effectively reorganize' in a rented apartment." *Id.* Alternatively, if the debtor presents evidence indicating that due to a "change in interest rates, the proximity to work, schools or church, moving costs, or the availability of alternate housing, the debto[r] cannot secure an appropriate place to live, the court may find the property 'necessary' for § 362(d)(2)(B) purposes." *Id.* Further, if more affordable, alternate housing is available to the debtors, whether by rent, lease or purchase, the court has grounds to lift the stay under § 362(d)(2)(B). *In re McIntyre*, 96 B.R. at 67.

There is no probative evidence of the lack of suitable housing in the record.

Courts have also considered whether the home is "essential for a reorganization 'that is in prospect.' " *In re Hanley*, 102 B.R. 36, 37 (W.D.Pa.1989) (citing *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 376, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988)). In *Hanley*, the court determined that, regardless of the fact that the debtors presented no evidence showing the necessity of the home to an effective reorganization, other grounds supported the secured creditor. The debtors' case was two years old and the "parties 'don't appear to be going anywhere towards a reorganization of this business.' " *Id.* Without the debtor's having a "reasonable possibility of a successful reorganization within a reasonable time" and no equity in the home, the court lifted the stay. *Id.* Another court reached a similar result by finding that the debtors had not "shown that a reorganization '[was] in prospect,' " although a plan had been filed. *In re Stulley*, 108 B.R. 174, 178 (Bankr.S.D.Ohio

1989). The court supported its ruling by stating the plan had "no genuine reorganization of any person or entity planned," and it was "a probably unconfirmable plan." *Id.* The debtors' dilatory action in pursuing reorganization, coupled with the court's finding that the debtors had no equity in the home and that they "made no showing that their home [was] essential for an effective reorganization," were grounds to lift the stay. *Id.* The court quoted the *Timbers* opinion as support:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many ... courts have properly said, that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'

*Id.* (emphasis in text) (quoting *Timbers*, 484 U.S. at 376, 108 S.Ct. at 632).

Further, the likelihood of reorganization must be real, and the debtor must show that retention of the home is an integral factor in the success of the plan. *La Jolla Mortgage Fund v. Rancho El Cajon Associates*, 18 B.R. 283 (Bankr.S.D.Cal.1982). This court stated that grounds existed under § 362(d)(2)(B) to lift the stay because:

> It is not enough for a debtor to argue that the automatic stay should continue because it needs the secured property in order to propose a reorganization. If this were the test all property held by debtors could be regarded as necessary to an effective reorganization. The key word under Code § 362(d)(2)(B) is 'effective'; the property must be necessary to an effective reorganization. If all the debtor can offer at this time is high hopes without any financial prospects on the horizon to warrant a conclusion that a reorganization in the near future is likely, it cannot be said that the property is necessary to an 'effective' reorganization.... Thus, the debtor must show that a reorganization can be anticipated,

and that this property has a part to play in the reorganization plan.

*Id.* at 291.

The court lifted the stay after finding that the debtor failed to present any evidence that reorganization was likely or to show that junior lienholders holding claims on the home could be paid some amount should the home be retained by the debtor. The court found that "[w]here no value will be realized to contribute to the reorganization effort, the debtor should not be able to protect the property unless it can show it is essential to achieving the reorganization goal." *Id.* at 290.

 There is no probative evidence in the record showing the Debtors' home to be an integral factor in the success of their plan. The Debtors, however, argue that the property is necessary per se because the primary purpose of their plan is to save the home. That argument is circular and presumes the desired result based solely upon the fact that the Debtors filed bankruptcy to save the home. The Court rejects this proposition.

Courts have also considered the debtor's purpose in filing the case, i.e., whether the case was filed to stop foreclosure of the home, which is the case at bar. In this type situation, one court found additional support to lift the stay under § 362(d)(2) in the legislative history of this section. After finding no equity in the home and that it was not necessary for an effective reorganization, the court stated "[t]he legislative history of § 362(d)(2) is of particular significance as it recognizes the need to provide relief to creditors who would have foreclosed on real property but for a last minute bankruptcy petition filed by its owner." *In re Lambert,* 57 B.R. at 714 (citing 161 *Cong.Rec.* S17409 (1978), *reprinted in* 3 *Collier On Bankruptcy* X–20 app. (15th ed. 1985)); *see also In re Gregory,* 39 B.R. at 409 n. 9. In accord is the *Stulley* court which, after finding the debtors filed their petition on the eve of the creditor's third attempt to foreclose the property, the other two sales having been postponed by the debtors' agreement to make payments, stated that "[i]t is, there-fore, patently obvious that the sought-after reorganization is, in reality, yet another obstacle erected by the Debtors in their quest to save their home from foreclosure." *In re Stulley,* 108 B.R. at 178.

Other courts have not lifted the stay when some special circumstance or reason existed to allow the debtor to retain the property. For example, a lienholder's motion to lift the stay was denied to allow the debtor to continue as owner of the property in order to make a claim on his homeowner insurance policy for major foundation repairs. Foreclosure by the lienholder would eliminate the debtor's ability to recover repair costs from the insurance company as well as a living allowance for alternate housing while repairs were made. *In re Bessey,* 65 B.R. 638, 642 (Bankr.S.D.Cal. 1986).

No such circumstances exist to require title to remain in the Debtors.

 Applying the objective factors used by other courts to the Debtors' situation, the Court finds that there is not sufficient evidence to find either a nexus between the home and the Debtors' production of income or that no alternative housing suitable for the Debtors' needs exists in the area at a lesser cost than the current monthly mortgage payment. Also, the current mortgage payment is clearly burdensome to the Debtors as they would not have otherwise filed this case, the primary purpose of which is to lien strip the home. Further, the Chapter 11 case was filed to prevent the foreclosure of the home, a result which would likely have occurred had Movant received notice of the filing before conducting the foreclosure sale. Additionally, no special circumstances or facts exist, such as the configuration of the home for a handicapped person or the need to maintain ownership to claim insurance benefits, which would bring the home into the realm of being essential for the Debtors' reorganization.

As further support for its determination, the Court reviewed case law dealing with this issue under Chapter 13, a Chapter created to allow wage earner, non-business

debtors to retain their homes by curing defaults on their home mortgage debt. In fact, a separate and distinct section, applicable only in Chapter 13 cases, specifically addresses the treatment of a debt secured by property that is the debtor's principal residence. *See* 11 U.S.C. § 1322(b)(2). There is no comparable section applicable to a Chapter 11 case. And, in line with congressional intent, saving the home is a frequent objective in Chapter 13 cases, as illustrated by the statement "the preservation of the residence from foreclosure is the primary reason for the filing of a Chapter 13 case." *In re Bruce,* 40 B.R. 884 (Bankr.W.D.Va.1984).

Given the rehabilitative purpose of Chapter 13 plans, courts have been reluctant to lift the stay when a debtor has filed a plan providing for the payment of the mortgage debt in full and shown that he can financially complete it. *See, e.g., In re Artishon,* 39 B.R. 890, 893 (Bankr.D.Minn.1984) (The home was necessary for a successful reorganization because the creditor failed to rebut the debtor's affidavit that the home was necessary to provide a stable environ for himself and minor children.); *Grundy National Bank v. Stiltner,* 58 B.R. 593, 595 (W.D.Va.1986) (The reorganization standard has a different meaning in a Chapter 13 than in a Chapter 11, and the test was met when debtors showed themselves able to meet the terms of their plan which proposed to save their home by curing over time the arrearage owed and making regular monthly payments when due.); *In re Crompton,* 73 B.R. 800, 811 (Bankr. E.D.Pa.1987) ("[T]he presence of an effective rehabilitative plan ... satisfies the § 362(d)(2)(B) requirement."); *In re Thomas,* 121 B.R. 94, 108 (Bankr.N.D.Ala.1990) (The debtor had equity in his home, and creditor could not meet § 362(d)(2)(B) because "a stable residence, particularly one in which the debtor and two children have lived for a number of years, must be considered essential to a successful reorganization under Chapter 13.").

Congress intended Chapter 13 to be the primary tool of wage earners to save their home. The trade off for that was, as this Court has determined, that 11 U.S.C. § 506 is not applicable to Chapter 13 cases due to the restriction set forth in 11 U.S.C. § 1322(b)(2); and, therefore, debtors cannot include a provision in their Chapter 13 plan to "lien strip" the mortgage debt on the home down to the property's current value. *See* Memorandum Opinion filed October 29, 1990, entered in *Ralph W. Boullion and Elaine Boullion v. Franklin D. Sapp and Gail C. Sapp, In re Boullion,* 123 B.R. 549 Western District of Texas, Austin Division. Since the same does not apply in Chapter 11 cases, the "necessary to an effective reorganization" standard should be more strictly applied.

## CONCLUSION

The Court concludes that the Debtors' home is not necessary to their effective reorganization because there is no evidence that the home is directly used in the production of income. Neither has there been a showing that no suitable alternative housing exists in the area at a cost comparable to or less than the mortgage payment. Also, no special circumstances exist such as the home being equipped for a handicapped individual or that the Debtors must maintain ownership in order to claim some contractual benefit from a third party.

Further, an alternate Chapter exists under the Bankruptcy Code affording these Debtors the ability to keep their home if that is the Debtors' goal. However, they would not be able to lien-strip the house due to § 1322(b)(2). *See* Memorandum Opinion, *In re Boullion.* Here, the Debtors want the benefit of Chapter 13, i.e., the ability to save their home, without the burden of that chapter, i.e., no lien stripping under § 1322(b)(2). They have therefore attempted to accomplish the lien-stripping result through Chapter 11. However, even though they are eligible to be Chapter 11 debtors, they have not shown that their home is necessary to their effective reorganization.

The stay will lift pursuant to an order of even date herewith.